BNY WESTERN TRUST *v.* DIANE L. ROMAN ET AL.
(SC 18386)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

---

Argued January 11—officially released March 23, 2010

*Anthony J. Musto,* for the appellant (proposed intervenor Glacier International Depository Bank).

*Andrew P. Barsom,* for the appellee (substitute plaintiff).

*Opinion*

KATZ, J. In the underlying foreclosure action, the plaintiff, Bank of New York, trustee,[1] filed a motion

---

[1] Although the original foreclosure complaint had named BNY Western Trust as the plaintiff, the Bank of New York, trustee, subsequently filed a motion to substitute itself as the plaintiff, claiming that the designation of

seeking permission of the trial court to accept an assignment of the 2005 successful bid for the sale of the foreclosed real property. The dispositive issue in this appeal is whether the trial court's decision denying a motion to intervene in the action filed by a third party claiming previously to have purchased an assignment of that bid, Glacier International Depository Bank (Glacier), was a final judgment from which an appeal lies. We conclude that, because Glacier has failed to make a colorable claim of intervention as of right, the trial court's decision denying its motion is not a final judgment. Accordingly, this jurisdictional defect necessitates dismissal of the appeal.

Our review of the numerous files in this case reveals the following undisputed facts and procedural history, which, despite being lengthy and protracted, will be condensed to their most salient details. In October, 2000, the plaintiff commenced the present action seeking to foreclose a mortgage it held on certain real property owned by the named defendant, Diane L. Roman.[2] In August, 2002, the trial court, *Stevens, J.*, rendered a judgment of foreclosure by sale. In August, 2003, Diane Roman transferred 50 percent of her interest in the subject property to her husband, Louis Roman, who thereafter was granted permission to intervene in the foreclosure action as a defendant on a "going forward" basis but not to challenge the judgment of foreclosure by sale. Following a "tortuous history of delays"; *BNY Western Trust* v. *Roman*, 102 Conn. App. 265, 266, 926 A.2d 36, cert. denied, 284 Conn. 935, 937 A.2d 693 (2007); the foreclosure sale took place on December 10, 2005. Ralph Flamini submitted the highest bid for the prop-

BNY Western Trust as the plaintiff had been due to a scrivener's error. The trial court granted the motion. We therefore refer to Bank of New York, trustee, as the plaintiff.

[2] Also named as a defendant in the underlying foreclosure action was Louis Panigutti, who claimed an interest in the property. Panigutti is not a party to this appeal.

erty, $200,000, tendering a deposit of $22,500. On December 20, 2005, the committee appointed to conduct the sale (committee) filed a motion for possession of the subject property, a motion for acceptance of the committee report, sale and deed, a motion for allowance of fees and expenses, and a motion for allowance of appraiser's fees. In January, 2006, Diane Roman filed an objection to those motions on the ground that Louis Roman and Flamini had entered into a contract under which Louis Roman agreed to pay Flamini a fee for bidding at the foreclosure sale in exchange for an assignment of the successful bid. Diane Roman asserted therein that Flamini had refused to make the assignment, despite Louis Roman's attempts to complete the transaction. On January 9, 2006, the trial court, *Hon. Howard T. Owens*, judge trial referee, overruled the objection, granted the committee's motions and rendered judgment approving the sale to Flamini. On January 11, 2006, Diane Roman filed a motion for approval of the assignment of the successful bid for the property from Flamini to Louis Roman, but neither the court nor the committee took any action on that motion.

Before the trial court sent notice of the judgment to the parties, on January 23 and January 24, 2006, respectively, Louis Roman and Diane Roman (Romans) each filed new bankruptcy petitions.[3] As a result, the court retained the property deed, and, on January 26, 2006, Flamini filed a motion for return of his deposit. In February and March, 2006, the plaintiff filed, respectively, an objection to the return of deposit, seeking an order to compel Flamini to close or forfeit his deposit, and a motion to release the deed. The plaintiff asserted

---

[3] It appears from the record that Diane Roman previously had filed bankruptcy petitions in September, 2002, in June, 2004, and in March, 2005. The United States Bankruptcy Court for the District of Connecticut dismissed the latest of those cases in May, 2005. That court subsequently also dismissed the bankruptcy case involving the Romans' January, 2006 petitions in October, 2006.

that the court's approval of the committee sale had deprived the Romans of their equity of redemption and that, because their only pending bankruptcy petitions had been filed *after* the trial court had approved the sale, the subject property was not part of their bankruptcy estates. On April 3, 2006, the trial court, *Richards, J.,* denied Flamini's motion for return of the deposit, granted the plaintiff's motion to release the deed and ordered Flamini to close on the property within thirty days or forfeit his deposit. In so ruling, the court determined that, because the judgment approving the foreclosure sale had been rendered *before* the Romans filed their only pending bankruptcy petitions, the bankruptcy stay had not affected the sale approval.

On April 3, 2006, an appearance was filed by "[Glacier], Louis Roman, CEO," under the status of "successful bidder of foreclosure sale," purportedly in lieu of Flamini's appearance. On April 5, 2006, the committee filed a motion for advice, asking the trial court how to proceed in light of a facsimile it had received indicating that an assignment of the successful bid from Flamini had been tendered to Glacier upon the payment of $22,500. On April 6, 2006, Diane Roman filed a notice of assignment of the successful bid, along with a copy of an assignment agreement dated April 4, 2006, and thereafter filed an objection to the committee's motion for advice, claiming that the transaction between Glacier, which, according to the assignment, was represented by Louis Roman as its chief executive officer, and Flamini was a private matter.[4] Although the committee appeared in court on its motion for advice, by agreement with the plaintiff, it was decided that the court would not act on the motion.

---

[4] According to a Glacier press release, marked in the file as an exhibit, Louis Roman was named both president and chief executive officer of Glacier in February, 2004.

Around this same time, Louis Roman appealed from the trial court's decision granting the plaintiff's motion to release the deed and ordering Flamini to close on the property, claiming that the trial court had violated the bankruptcy stay. Louis Roman's filings from this point forward listed Glacier as one of the parties upon which service had been made. The Appellate Court dismissed the appeal as moot on the ground that the Romans' equity of redemption had been extinguished once the sale of the property had been approved and the time period to appeal from the judgment approving the sale had expired. *BNY Western Trust* v. *Roman*, supra, 102 Conn. App. 267.

In November, 2007, because Flamini still had not closed on the property, the plaintiff again moved for an order to compel Flamini to do so or forfeit his deposit. Louis Roman filed an objection to that motion on the ground that Flamini had assigned the successful bid to Glacier.[5] On April 1, 2008, the trial court again ordered Flamini to close on the property within thirty days or forfeit his deposit. On May 5, 2008, after Flamini still had failed to close on the property, the committee filed a motion for advice, pursuant to which, on June 3, 2008, the court, *Blawie, J.*, ordered that Flamini's deposit be paid to the plaintiff as credit against the debt.

On July 8, 2008, the plaintiff moved for permission to accept an assignment of the successful bid from Flamini. The plaintiff asserted essentially that the foreclosure action had been pending for several years due to the bankruptcy filings and Flamini's failure to close on the property, and that it was seeking to obtain an assignment of the bid so that it could consummate the sale and conclude the action expeditiously. The plaintiff

---

[5] According to this objection, Flamini had received from Glacier a check for $24,750, which included the deposit of $22,500 plus a payment premium of $2250.

stated therein that it had been advised by Flamini's attorney that Flamini was willing to assign the bid to the plaintiff.

On July 21, 2008, in response to the plaintiff's motion, Glacier *for the first time* filed a motion to intervene in the foreclosure action, along with an objection to the plaintiff's motion for permission to accept the assignment of the successful bid. Glacier claimed that it already had purchased an assignment of Flamini's bid and that it therefore had a right to be heard regarding the disposition of the property. Diane Roman also filed an objection to the plaintiff's motion, asserting that, because Flamini had assigned his right to the successful bid to Glacier, there was nothing for him to assign to the plaintiff. The trial court, *Blawie, J.*, granted the plaintiff's motion for permission to accept an assignment of Flamini's bid, overruled all objections thereto and summarily denied Glacier's motion for intervention. See footnote 14 of this opinion.

Glacier appealed from the trial court's order denying its motion to intervene to the Appellate Court, claiming that the trial court improperly had: (1) denied Glacier the right to intervene; and (2) permitted the assignment of the successful bid to the plaintiff. Thereafter, the plaintiff filed a motion to dismiss the appeal for lack of subject matter jurisdiction on the grounds that Glacier lacked standing and had not filed a timely appeal from a final judgment, contending that Glacier had filed the appeal solely for purposes of delay. The Appellate Court denied the plaintiff's motion to dismiss, but, sua sponte, ordered the parties to brief the issue of whether Glacier had made a colorable claim as to intervention as a matter of right. Thereafter, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We agree with the plaintiff that Glacier has failed to make a colorable claim to intervention as of right, and, therefore, has not appealed

from a final judgment. Accordingly, we must dismiss the appeal.

We begin with our well settled jurisprudence. "The subject matter jurisdiction of our appellate courts is limited by statute to appeals from final judgments. General Statutes § 52-263; see generally W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2009 Ed.) § 61-1; C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.1 et seq. The legislature may, however, deem otherwise interlocutory actions of the trial courts to be final judgments, as it has done by statute in limited circumstances. See, e.g., General Statutes § 31-118 (authorizing appeals from temporary injunctions in labor dispute); General Statutes § 52-278*l* (authorizing appeals from prejudgment remedies); see also W. Horton & K. Bartschi, supra, §§ 61-2 through 61-11. Alternatively, the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). . . . Under *Curcio*, the landmark case in the refinement of final judgment jurisprudence . . . interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them. [Id.]" (Citations omitted; internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 338–39, 968 A.2d 385 (2009). Unless an order can satisfy one of these two prongs, the lack of a final judgment "is a jurisdictional defect that [necessitates] . . . dismissal of the appeal." (Internal quotation marks omitted.) *Rivera* v. *Veterans Memorial Medical Center*, 262 Conn. 730, 734, 818 A.2d 731 (2003).

In the present case, no statutory provision expressly deems a trial court's action on a motion to intervene

to be a final judgment. Moreover, only the second prong of *Curcio* is implicated. "The second prong of the *Curcio* test . . . requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she then holds. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled." (Citations omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226–27, 901 A.2d 1164 (2006). Thus, "the claimed right cannot be a contingent right created by statute and subject to the discretion of the trial court . . . ." (Internal quotation marks omitted.) Id., 231.

General Statutes §§ 52-102[6] and 52-107[7] govern the intervention of nonparties to an action and provide

[6] General Statutes § 52-102 provides in relevant part: "Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein . . . ."

[7] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the

for both permissive intervention and intervention as a matter of right. See, e.g., *In re Baby Girl B.*, 224 Conn. 263, 274–78, 618 A.2d 1 (1992); *Horton v. Meskill*, 187 Conn. 187, 191–92, 197, 445 A.2d 579 (1982). Therefore, under the second prong of *Curcio*, whether the trial court's action on a motion to intervene is appealable depends on whether intervention is an absolute right or a matter within the trial court's discretion.[8] *Palmer v. Friendly Ice Cream Corp.*, 285 Conn. 462, 479, 940 A.2d 742 (2008). "[A]n unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless he can make a colorable claim to intervention as a matter of right. If he does make such a colorable claim, on appeal the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention." (Internal quotation marks omitted.) *Kerrigan v. Com-*

judgment will affect, the court, on his application, shall direct him to be made a party." Accord Practice Book § 9-18; see also General Statutes § 52-108 and Practice Book § 9-19 (allowing new parties to be brought in).

[8] Intervention as of right provides a legal right to be a party to the proceeding that may not be properly denied by the exercise of judicial discretion. Permissive intervention means that, although the person may not have the legal right to intervene, the court may, in its discretion, permit him or her to intervene, depending on the circumstances. *Palmer v. Friendly Ice Cream Corp.*, 285 Conn. 462, 479, 940 A.2d 742 (2008) ("[p]ermissive intervention . . . is entrusted to the trial court's discretion . . . [and] depends on a balancing of factors" [internal quotation marks omitted]). In deciding whether to grant a request for permissive intervention, a trial court should consider: the timeliness of the intervention; the proposed intervenor's interest in the controversy; the adequacy of representation of such interests by other parties; the delay in the proceedings or other prejudice to the existing parties the intervention may cause; and the necessity for or value of the intervention in resolving the controversy. *In re Baby Girl B.*, supra, 224 Conn. 277; accord *Horton v. Meskill*, supra, 187 Conn. 197. With respect to the propriety of the trial court's balancing of these factors, we have stated that "[a] ruling on a motion for permissive intervention would be erroneous only in the rare case [in which] such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion." *Horton v. Meskill*, supra, 197. A party challenging a ruling on permissive intervention "bear[s] the heavy burden of demonstrating an abuse of . . . discretion . . . ." *In re Baby Girl B.*, supra, 277.

*missioner of Public Health*, 279 Conn. 447, 449 n.3, 904 A.2d 137 (2006); see also *King* v. *Sultar*, 253 Conn. 429, 435–36, 754 A.2d 782 (2000) (noting that denial of motion to intervene filed by person with colorable claim to intervention as matter of right is final judgment for purposes of appeal and that proposed intervenor is "party" for purposes of § 52-263); *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 536, 582 A.2d 1174 (1990) (same); *Ricard* v. *Stanadyne, Inc.*, 181 Conn. 321, 322 n.1, 435 A.2d 352 (1980) (same).

In order for a proposed intervenor to establish that it is entitled to intervene as a matter of right, the proposed intervenor must satisfy a well established four element conjunctive test: "[T]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation."[9] (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 456–57. A proposed intervenor must allege sufficient facts, through its motion to intervene and the pleadings, to make the requisite showing of its right to intervene. *Webster Bank* v. *Zak*, 259 Conn. 766, 775, 792 A.2d 66 (2002); see also *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 747, 699 A.2d 73 (1997) ("A proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the

---

[9] Although not implicated in the present case, there may be instances in which a complainant's right to intervene in the case derives from the statutory scheme under which the complainant's claims are to be resolved. See, e.g., *Commission on Human Rights & Opportunities* v. *Housing Authority*, 117 Conn. App. 30, 53, 978 A.2d 136 (2009). In such cases, the terms of the statute dictate the right to intervene, rather than the four element test applied in the present case.

motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment."), overruled in part on other grounds by *Kerrigan* v. *Commissioner of Public Health*, supra, 455. No additional testimony or evidence is required. *Webster Bank* v. *Zak*, supra, 776. Failure to meet any one of the four elements, however, will preclude intervention as of right. See *Kerrigan* v. *Commissioner of Public Health*, supra, 460–61 n.14; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 148, 758 A.2d 916 (2000).

In the present case, Glacier contends that it made a colorable claim of intervention as of right on the basis of the fact that, because it had purchased the successful bid from Flamini, the bid was a property interest that Glacier had a constitutional and statutory right to protect. Essentially, Glacier claims a right to be heard regarding the disposition of its property under the fifth amendment to the United States constitution, article first, § 11, of the Connecticut constitution, and the relevant case law interpreting these provisions. Additionally, Glacier claims a right to be heard under § 52-102. See footnote 6 of this opinion. Accordingly, Glacier claims that its motion for intervention was timely because it filed the motion thirteen days after the plaintiff filed its July 8, 2008 motion for permission to accept the assignment of the successful bid. Glacier contends in its brief to this court that "[t]he issue of ownership of the assignment had not been challenged" prior to this time, and that it had "acted immediately to defend its interest at the first attempt to challenge the interest."

The plaintiff responds that it is not enough merely to invoke statutory and constitutional provisions, but, rather, that Glacier must satisfy this court's four elements conjunctive test in *Kerrigan* interpreting the intervention statutes in order to demonstrate a color-

able claim to intervention as a matter of right that would afford this court jurisdiction to consider Glacier's appeal. In response to Glacier's claimed interest, the plaintiff points to the facts that the court never approved an assignment by Flamini and that Glacier never sought permission from the court to accept the assignment, as well as to Diane Roman's representation in her pleadings that Flamini previously had failed to assign the bid.[10] With respect to timeliness, the plaintiff contends that, because, as far back as January, 2006, the pleadings represented that Flamini first had assigned the bid, Glacier's filing of the motion to intervene more than two years later cannot be deemed timely. We agree with the plaintiff that Glacier has failed to meet its burden of establishing a colorable claim that its motion to intervene was timely filed.[11] Accordingly, there is not a final judgment from which Glacier can appeal.

We begin with the standard of review. Our scope of review over a claim of intervention as of right is plenary.[12] *Kerrigan* v. *Commissioner of Public Health,*

[10] The plaintiff also contends that there is no documentation of the assignment from Flamini to Glacier. Upon inquiry by this court at oral argument, Glacier's counsel stated his belief that Diane Roman had submitted such documentation to the trial court at some point in the proceedings. Our careful review of the record in this case has disclosed two copies of this assignment in the Appellate Court files from Louis Roman's appeal: an unstamped document that appears to have been submitted by the committee in conjunction with its April 5, 2006 motion for advice; and another unstamped document that appears to have been submitted by Diane Roman in conjunction with her April 5, 2006 notice of assignment. These documents were signed only by Flamini and represented that Flamini had assigned his bid to Glacier "represented by Louis Roman CEO."

[11] Because the applicable test for intervention as of right is conjunctive; see, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.,* supra, 60 Conn. App. 148; and Glacier has failed to satisfy the timeliness factor, we need not consider whether Glacier has satisfied the remaining three prongs for establishing that it is entitled to intervene as a matter of right and thus has appealed from a final judgment.

[12] In *Kerrigan* v. *Commissioner of Public Health,* supra, 279 Conn. 455, we determined that, contrary to earlier case law, plenary review should be

supra, 279 Conn. 454–55. Turning to the first prong in determining whether a proposed intervenor is entitled to intervene as a matter of right, timeliness, "[t]he necessity for showing that a would-be intervenor made a timely request for intervention involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeli-

applied to three of the four elements of the test for intervention: "To the extent that *Washington Trust Co.* [v. *Smith,* supra, 241 Conn. 744] stands for the proposition that, other than a matter of timeliness, a trial court's decision on the merits of a party's motion to intervene as a matter of right, and specifically the nature and extent of the rights at issue, is subject to review for abuse of discretion, it is overruled." We left open the question of which standard of review would apply to the timeliness consideration, however, because that element was not at issue in that case. *Kerrigan* v. *Commissioner of Public Health,* supra, 455 n.11.

Although, in the present case, we need not determine what standard of review would apply to the *merits* of the trial court's decision on timeliness, because we conclude that this element is central to the final judgment question in the present case, we now decide that the same standard that applies to the other three elements of intervention as of right should apply to this element for purposes of the threshold jurisdictional inquiry. Fundamentally, it seems inappropriate to defer to the trial court's determination when deciding our jurisdiction. In addition, in *Kerrigan,* we held that a plenary scope of review was proper with regard to a claim of intervention as of right because it best accommodates the " 'direct and substantial interests' implicated by [such a motion] . . . and is more consistent with the nature of the relevant inquiry taken to evaluate such a claim, which is confined to a review of the relevant pleadings, with all allegations therein taken as true." Id., 455. It is evident that those same considerations and concerns apply to the timeliness factor. Specifically, as we set forth subsequently in this opinion, the factors to consider when deciding the issue of timeliness of a motion to intervene as a matter of right (the nature of the interest and the purpose for which the intervenor is seeking to be brought into the action) share features with those that the movant must establish to satisfy the other three criteria (that the movant has a direct and substantial interest in the subject matter of the litigation, its interest will be impaired by the disposition of the litigation without its involvement and that the movant's interest will not be represented adequately by any party to the litigation). Accordingly, we hereinafter apply a plenary scope of review of all four elements of the inquiry at hand for purposes of the jurisdictional question.

ness." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 146–47. Factors to consider also include the nature of the interest and the purpose for which the intervenor is seeking to be brought into the action. *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744–45. "As a general matter, the timeliness requirement is applied more leniently for intervention of right than for permissive intervention because of the greater likelihood that serious prejudice will result." (Internal quotation marks omitted.) Id., 744. Nevertheless, "[t]he dilatory nature of a motion to intervene is always a factor for a trial court to consider." Id., 745. Although "there are no absolute ways to measure timeliness"; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 147; "[a]s a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." *R & G Mortgage Corp.* v. *Federal Home Loan Mortgage Corp.*, 584 F.3d 1, 7 (1st Cir. 2009).

In the present case, because the dispositive issue is not whether the trial court properly denied the motion to intervene, but whether that decision constitutes a final judgment that provides this court with jurisdiction to consider the merits of that decision, the timeliness inquiry is viewed through a slightly different lens, namely, whether Glacier has made a *colorable* claim to intervention as of right. A colorable claim is one "that is superficially well founded but that may ultimately be deemed invalid . . . ." (Internal quotation marks omitted.) *State* v. *Thomas*, 106 Conn. App. 160, 180, 941 A.2d 394, cert. denied, 287 Conn. 910, 950 A.2d 1286 (2008). "When the facts relevant to an issue are not in dispute, this court's task is limited to a determination of whether, on the basis of those facts, the trial court's conclusions of law are legally and logically correct." (Internal quotation marks omitted.) *Scoville* v. *Shop-Rite Supermarkets, Inc.*, 86 Conn. App. 426, 430, 863

A.2d 211 (2004), cert. denied, 272 Conn. 921, 867 A.2d 838 (2005). "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary."[13] (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005). Furthermore, in determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party. *Redding* v. *Elfire, LLC*, 98 Conn. App. 808, 818, 911 A.2d 1141 (2006).

As we previously have noted, Glacier asserts that it has made a colorable claim that its motion to intervene

[13] We note that the trial court did not specifically address timeliness or the other factors when denying Glacier's motion to intervene; it simply marked that motion as denied. The trial court did make a notation on its decision granting the plaintiff permission to accept the assignment of bid from Flamini, stating in relevant part: "Louis Roman, having failed to obtain permission of [the] court to accept assignment of the bid, any purported assignment to him is void. Plaintiff [is] authorized to consummate sale." It is unclear whether the trial court denied Glacier's motion: (1) solely because of the failure of Flamini or Louis Roman, in either his individual capacity or as Glacier's representative, to get the court's permission in advance of the transfer; or (2) in light of the various pleadings, deemed Louis Roman and Glacier as having an identity of interest and relied on the basic legal proposition that, because a judicial sale becomes complete and creates a legal right to obligations among parties when it is confirmed and ratified by the court, Louis Roman no longer had any cognizable interest in the property and without permission of the court, he could not accept any such interest. See *BNY Western Trust* v. *Roman*, supra, 102 Conn. App. 267. Regardless, however, of the trial court's rationale, if Glacier was of the view that the trial court had applied improper reasoning or was unclear as to the basis of the court's decision, Glacier should have filed a motion for articulation. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 122–23, 981 A.2d 1068 (2009) ("when a trial court opinion is silent as to the standard of proof applied, an appellate court is not the proper forum to first raise a claim that the trial court applied the wrong standard when that claim could have been raised in, and more fairly remedied by, a motion for articulation or reargument"). Nevertheless, because there are no essential disputed facts and the issue before this court is subject to plenary review, the trial court's analysis is not essential to this court's consideration of the issue on appeal. *Smith* v. *Greenwich*, 278 Conn. 428, 465, 899 A.2d 563 (2006).

was timely filed on July 21, 2008, because it filed that motion only thirteen days after the plaintiff moved for permission to accept an assignment of the bid, which was the first time that the ownership of the bid had been challenged. The plaintiff, in response, contends that, because the pleadings reference the purported assignment of Flamini's bid to Louis Roman as early as January, 2006, and alleges that Louis Roman entered into an agreement with Flamini prior to the foreclosure sale in December, 2005, Glacier has failed to satisfy this threshold burden as to the timeliness of its motion. Upon review of the numerous pleadings in this case, we conclude that the facts clearly evidence that Glacier had an alleged interest that was implicated long before the plaintiff filed its final motion for acceptance of the bid in this protracted litigation and that rendered Glacier's filing of the motion to intervene clearly untimely.

We first note that, although the plaintiff appears to assume a complete identity of interest between Glacier and Louis Roman and undoubtedly there is evidence to support such a conclusion, the trial court did not make any express findings as to that issue. See footnote 13 of this opinion. Therefore, we predicate our ultimate conclusion solely on the basis of those pleadings dated after the purported assignment to Glacier. We are mindful, however, that, because Louis Roman filed all of the documents on Glacier's behalf, Glacier was on notice of the events that preceded its motion to intervene. Indeed, it does not claim otherwise.

The record reflects pleadings that reference the assignment of the bid to Glacier as far back as April, 2006, when the assignment purportedly occurred. As we previously have highlighted in this opinion, the court files are replete with such pleadings following that date. Specifically, Diane Roman's April 5, 2006 notice of assignment, her April 17, 2006 objection to the committee's request for advice, and Louis Roman's December

3, 2007 objection to the plaintiff's motion to compel Flamini to close on the property or forfeit his deposit each asserted that Flamini had sold the successful bid to Glacier on April 4, 2006. At oral argument before this court, Glacier agreed that this was the date on which the purported assignment had occurred. Thus, as the record amply demonstrates, Glacier's claimed acquisition of Flamini's bid occurred more than two years before Glacier ever moved to intervene.

Glacier also had numerous opportunities to move to intervene in the foreclosure proceedings. The most obvious opportunity was on April 3, 2006, when Louis Roman filed a purported appearance in the case on Glacier's behalf in its status as the "successful bidder of [a] foreclosure sale." Indeed, events occurred in the period between April, 2006, and July, 2008, that implicated the disposition of the property and that should have provided Glacier with an impetus to so move, including, but not limited to, when: in November, 2007, the plaintiff moved to compel Flamini to close on the property or forfeit his deposit; on April 1, 2008, the trial court ordered Flamini for the second time to close on the property within thirty days or forfeit his deposit; in May, 2008, the committee sought advice from the court due to Flamini's failure to close on the property; and on June 3, 2008, the court ordered Flamini's deposit to be paid to the plaintiff as a credit against the debt, to name but a few.[14]

Most significantly, with regard to the prejudicial effect of intervention on the existing parties, it is beyond doubt that the plaintiff, which has been embroiled for eight years in blatant attempts to prolong and circumvent what should otherwise have been a routine foreclo-

---

[14] Indeed, our review of the court files shows twenty-seven docket entries made between November, 2007, and July, 2008, any one of which would have provided an opportunity for Glacier to seek intervention.

sure action, would have been prejudiced by this eleventh hour attempt to intervene.[15] Glacier's failure to intervene on a more timely basis shielded it from court orders directing it to close the sale and the attendant effects of a failure to comply with such orders. Cf. *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 812, 793 A.2d 260 (2002) (application to intervene as of right in appeal challenging tax assessments deemed timely even though it was filed two and one-half years after movant took title to property at issue during pendency of appeal because filing occurred more than two years before appeal was concluded and "no one was prejudiced by [movant's] filing for intervention when it did"). Indeed, if Glacier's intention was to obtain possession of and title to the property, it presumably would have acted expeditiously to intervene in the action upon executing the assignment. Glacier's failure to do so indicates that it lacked the capacity to complete the sale during the more than two year period following the purported assignment and simply was engaging in a delay tactic. In determining timeliness, "[t]he dilatory nature of a motion to intervene is always a factor . . . to consider"; *Washington Trust Co.* v. *Smith,* supra, 241 Conn. 745; and undoubtedly Glacier was dilatory without apparent good cause. In sum, any potential prejudice to Glacier is entirely of its own making.

Rather than seek the court's permission to be made a party shortly after its April 4, 2006 alleged acquisition of Flamini's bid, Glacier chose to do nothing for more than two years while its chief executive officer, Louis

---

[15] As the trial court noted in an April 24, 2008 memorandum of decision setting forth the basis of its decision granting the plaintiff's December 19, 2007 motion to terminate the appellate stay of execution, the action had been pending for eight years and "the reasonable inferences drawn from the protracted record" are that the Romans had acted solely for the purposes of delay and orchestrating situations, including the arrangement with Flamini to bid at the public auction but then not close on the property.

Roman, engaged in procedural maneuvers that prolonged the foreclosure action. Cf. *Moasser* v. *Becker*, 78 Conn. App. 305, 322, 828 A.2d 116 (concluding that trial court properly had limited issues on which defendant could intervene because defendant had sought to intervene more than two years after receiving actual notice of action), cert. denied, 266 Conn. 910, 832 A.2d 70 (2003). Indeed, Glacier did not file its motion to intervene until days after the trial court *finally* was presented with a party willing to close on the property, namely, the plaintiff, because no one else would. Mindful that the necessity for showing that a would-be intervenor made a timely request for intervention involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 147; we conclude that under the totality of the circumstances in the present case, Glacier did not make a colorable claim of intervention as of right.

The appeal is dismissed.

In this opinion the other justices concurred.