******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## ALTAVISTA INVESTMENTS, LLC *v.*
## LEYLA MAKEEVA ET AL.
### (AC 46885)

Elgo, Seeley and Westbrook, Js.

*Syllabus*

B Co., which held a note that was secured by a mortgage on the plaintiff's property, filed a motion to intervene in postjudgment summary process eviction proceedings for the limited purpose of asserting its rights with respect to use and occupancy payments made by the defendants and participating in any proceedings to determine the final distribution of those funds. The trial court held a hearing in accordance with the applicable statute (§ 47a-35b), and denied B Co.'s motion to intervene, determining that B Co. was not a proper party to the eviction action because it did not have a possessory interest in the real property. On B Co.'s appeal to this court, *held* that the trial court improperly failed to permit B Co. to intervene in the postjudgment proceedings as a matter of right, and, accordingly, this court reversed the trial court's judgment and remanded the case with direction to grant B Co.'s motion to intervene and for further proceedings in accordance with § 47a-35b: pursuant to the four factor test for intervention as of right, which the trial court improperly failed to consider, this court had jurisdiction over the appeal because B Co. demonstrated a colorable claim of intervention as of right, such that the denial of its motion for intervention was a final judgment for purposes of appeal; moreover, the trial court improperly denied the motion to intervene on its merits because the motion was clearly timely, as it was filed with the trial court during the pendency of the appeal from the judgment of possession for the express purpose of vindicating rights under § 47a-35b, pursuant to which the trial court was not required to hold a hearing until the final disposition of the appeal, B Co. had a direct right to the subject matter of the postjudgment litigation, as neither the plaintiff nor the defendants contested B Co.'s assertion that it had a contractual right to the use and occupancy payments, that right was a substantial one, as reflected in the amount of the accumulated use and occupancy payments at issue, B Co.'s interest would likely be impaired by any disposition in which it was not permitted to participate because § 47a-35b expressly provides that the court's distribution of the accumulated use and occupancy payments is to be conclusive, and B Co.'s interest in the use and occupancy payments was clearly adverse to the interests of the plaintiff and the defendants, and, accordingly, the existing parties to the litigation would not adequately protect B Co.'s interest in obtaining the use and occupancy payments; furthermore, because the § 47a-35b hearing was separate and distinct from the underlying eviction action, whether B Co. had a possessory interest in the property that was subject to the eviction

action was not a proper consideration for the trial court in determining whether to grant the motion to intervene, instead, the court should have determined whether B Co. had a sufficient interest in the § 47a-35b hearing, and such interest was apparent from the record.

Argued March 11—officially released June 11, 2024

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session, where the plaintiff withdrew the complaint as to the defendant John Doe et al.; thereafter, the court, *Spader, J.*, rendered judgment against the defendant Stanislav V. Lenskiy et al. for failure to appear; subsequently, the court, *Spader, J.*, rendered judgment of possession for the plaintiff, from which the named defendant et al. appealed to this court, which affirmed the trial court's judgment; thereafter, the court, *Cirello, J.*, denied the motion to intervene filed by Baotou Capital, LLC, and Baotou Capital, LLC, appealed to this court. *Reversed*; *judgment directed*; *further proceedings*.

*Matthew B. Gibbons*, with whom was *Patrick M. Fahey*, for the appellant (proposed intervenor Baotou Capital, LLC).

*Opinion*

WESTBROOK, J. In the underlying summary process eviction action (eviction action), the trial court rendered a judgment of possession against the defendant Leyla Makeeva and seven other defendants, in favor of the plaintiff, Altavista Investments, LLC.[1] See *Altavista*

---

[1] In addition to Makeeva, the following additional parties were named as defendants in the underlying eviction action: Vladimir Lenskiy, Valerian Lenskiy, Zinaida Lenskaya, Stanislav V. Lenskiy, Anastasia Lenskiy, Vitaly Lenskiy, Ilana Lenskiy, and four additional occupants noticed by aliases in accordance with General Statutes § 47a-23 (b). The action later was withdrawn as to the unnamed defendants, and the court rendered judgment against Stanislav V. Lenskiy, Anastasia Lenskiy, Vitaly Lenskiy, and Ilana Lenskiy for failure to appear.

Neither the plaintiff nor any of the defendants filed a brief or otherwise participated in the present appeal, and, consequently, this court issued an order that they would not be permitted to participate in oral arguments and

*Investments, LLC* v. *Makeeva*, 220 Conn. App. 901, 297 A.3d 285 (2023) (affirming judgment of possession). Baotou Capital, LLC (Baotou), which holds a note secured by a mortgage on residential property located at 969 North Street in Greenwich (property), the property at issue in the eviction action, filed the present appeal from the denial of its postjudgment motion to intervene on the basis of an ownership interest it claims in use and occupancy payments made by the defendants in lieu of bond during the pendency of the prior appeal. See General Statutes § 47a-35a (a).[2] Baotou claims that the trial court improperly determined that, because it lacked any possessory interest in the property, it was not a proper party to the eviction action and, thus, also was not entitled to intervene in postjudgment proceedings pursuant to General Statutes § 47a-35b[3] regarding the final distribution of the use and occupancy payments. We agree that the court improperly failed to permit Baotou to intervene as a matter of right and, accordingly, reverse the judgment of the court.

The record reveals the following relevant facts and procedural history. The plaintiff purchased the property

that the appeal would be considered solely on the basis of Baotou Capital, LLC's brief and oral argument, and the record as defined by Practice Book § 60-4.

[2] General Statutes § 47a-35a (a) provides in relevant part that, if an "appeal is taken by the defendant occupying a dwelling unit . . . in an action of summary process," the defendant must give the adverse party an appeal bond or, "upon motion by the defendant and after [a] hearing," the court shall order, in lieu of a bond, "the defendant to deposit with the court payments for the reasonable fair rental value of the use and occupancy of the premises during the pendency of [an] appeal accruing from the date of such order. . . ."

[3] General Statutes § 47a-35b provides: "Upon final disposition of the appeal, the trial court shall hold a hearing to determine the amount due each party from the accrued payments for use and occupancy and order distribution in accordance with such determination. Such determination shall be based upon the respective claims of the parties arising during the pendency of the proceedings after the date of the order for payments and shall be conclusive of those claims only to the extent of the total amount distributed."

in 2017.[4] The plaintiff financed the purchase by executing a $4,940,000 note and a mortgage in favor of Baotou's predecessor in interest, Patriot Bank, N.A. (Patriot Bank).[5] Pursuant to the terms of the mortgage, in addition to a security interest in the property, the plaintiff granted to Patriot Bank the plaintiff's rights to "[a]ll of the rents, receipts, revenues, income, issues thereof and profits now due or which may become due or to which [the plaintiff] may now or hereafter shall become entitled . . . or may demand or claim, arising or issuing from or out of any and all using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the [m]ortgaged [p]roperty or any part thereof . . . ." In addition to the note and mortgage, the plaintiff also executed a separate assignment of

---

[4] At the hearing on the motion to intervene, the defendants' attorney provided the court with the following undisputed background information regarding the plaintiff's purchase of the property and the relationships between the various parties. "[T]he [plaintiff's] principal . . . is a gentleman named Vladimir Guzinsky. He is the sole owner of [the plaintiff]. [The plaintiff] was formed solely for the purchase of [the property]. [Guzinsky] was, at one time, the best friend of [the defendant] Vladimir Lenskiy . . . . They and their wives and their children vacationed together, spent a significant amount of time together. In 2002, [Vladimir Lenskiy] purchased the [property]. In 2005 . . . he tore down the former home and finished the construction on the house that stands on the property since that time . . . . He and his wife raised their children in that home, the children grew up, and he continues to reside in that home ever since 2005. In 2012, [Vladimir Lenskiy] ran into some financial trouble with the bank that then had the mortgage on the construction loan. And there was a period of years where they were negotiating but eventually that bank started a foreclosure action against [him]. [Vladimir Lenskiy] negotiated with that bank to give him permission to sell the property at a short sale to [the plaintiff]. . . . [Guzinsky] formed [the plaintiff] to save his friend from the foreclosure action and bought it at a short sale . . . in June of 2017, for $3.8 million. Two months later, he financed the property with Patriot Bank . . . ." Guzinsky allowed the defendants to retain possession of the property, and, although Guzinsky "created a lease . . . between himself and [Vladimir Lenskiy] . . . [Vladimir Lenskiy] had never paid [Guzinsky] rent."

[5] The terms of the original note and mortgage were subsequently amended. All references to the note and mortgage in this opinion are to the operative amended loan documents.

leases and rentals, which provided, in relevant part, an assignment of "[a]ll rents, additional rents, payments in connection with any termination, cancellation or surrender of any Lease, revenues, income, issues and profits arising from the Leases and renewals and replacements thereof and any cash or security deposited in connection therewith and together with all rents, revenues, income, issues and profits . . . from the use, enjoyment and occupancy of the [p]roperty . . . ." As part of the assignment of leases and rentals, Patriot Bank granted the plaintiff a revocable license to collect and receive rents and other sums due under any lease. This license automatically was to be revoked in the event of a default as set forth in the loan documents.

In October, 2019, the plaintiff entered into a purported multiyear arrangement with Makeeva to lease the property for quarterly payments of $60,000. In June, 2020, Patriot Bank commenced a mortgage foreclosure action (foreclosure action) against the plaintiff and its tenants, which remains ongoing. See *Patriot Bank, N.A.* v. *Altavista Investments, LLC,* Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-20-6047105-S.

In August, 2021, the plaintiff commenced the underlying summary process eviction action alleging both nonpayment of rent and that the defendants' right or privilege to occupy the property had terminated. On June 14, 2022, the court, *Spader, J.,* issued a memorandum of decision concluding that, although the plaintiff had failed to meet its burden with respect to its claim of nonpayment of rent due to a lack of any enforceable lease, it nevertheless had prevailed with respect to its claim that any right of the defendants to occupy the property had terminated. The court rendered a judgment of possession in favor of the plaintiff with a stay of execution through July 31, 2022. The court also concluded that its "findings . . . regarding a lack of a

rental agreement [do] not impact the plaintiff's ability to ask for use and occupancy payments in the event of an appeal filed by the defendants."

The defendants Makeeva and Vladimir Lenskiy timely appealed from the judgment of possession and also filed a motion asking the court to order appropriate use and occupancy payments in lieu of an appeal bond with surety. The court granted the motion, ordering the defendants to deposit monthly payments of $24,000 with the clerk of the court.

Shortly after the appeal was filed in the eviction action, Patriot Bank assigned the operative note, mortgage, and assignment of leases and rents to Baotou. The court in the foreclosure action granted a motion to substitute Baotou for Patriot Bank as the party plaintiff in that action.

On February 7, 2023, Baotou filed a postjudgment motion to intervene in the eviction action for the limited purpose of asserting its rights with respect to the use and occupancy payments being deposited with the clerk of court and participating in any proceedings to determine the final distribution of those funds. Makeeva and Vladimir Lenskiy initially filed an objection to the motion to intervene in which they argued that such intervention was "both premature and presumptuous" and that Baotou "must wait for the entry of judgment in the foreclosure [action] and the resolution of the appeal in the [eviction] action." They later withdrew their objection. The plaintiff also filed an objection to the motion to intervene arguing that Baotou was not a proper party to the eviction action, which is limited to the issue of possession, and, thus, should not be permitted to intervene.

In response to a May 12, 2023 caseflow request from Baotou seeking adjudication of its motion to intervene, the court, *Cirello*, *J.*, issued an order that it would

"consider the motion to intervene . . . when it considers the use and occupancy disbursement required by [§] 47a-35b." On July 25, 2023, this court issued a memorandum decision affirming the judgment of possession. *Altavista Investments, LLC* v. *Makeeva*, supra, 220 Conn. App. 901. The defendants did not file a petition for certification to appeal to our Supreme Court.

The court scheduled a hearing on Baotou's motion to intervene for August 29, 2023. The court subsequently issued an order denying the motion to intervene. The court provided the following rationale for its ruling: "[Baotou] seeks to assert a money damages claim or a right to money held by the clerk in this [eviction] action for possession. [Baotou] is not the owner of the subject property nor able to terminate the possessory interest of the defendant[s] through eviction as authorized in a summary process action. Its claims for the money held by the clerk's office are based on contract principles and privity against the plaintiff . . . . As [Baotou] does not seek a possessory interest in the subject property, it is not a proper party to this action." This appeal followed.[6]

Rather than turning directly to the merits of the appeal, Baotou, in its appellate brief, first addresses a threshold issue, namely, whether this appeal was taken from an appealable final judgment. See *In re Santiago G.*, 325 Conn. 221, 228, 157 A.3d 60 (2017) ("[u]nless a specific right to appeal otherwise has been provided by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim"

---

[6] On March 7, 2024, the plaintiff filed a caseflow request asking the court to hold a hearing to distribute the $336,000 in use and occupancy payments currently held by the court. Baotou filed an objection arguing that the court should not hold a hearing until this court resolved its appeal regarding Baotou's right to intervene. The court sustained Baotou's objection.

(internal quotation marks omitted)). We agree with Baotou that we have jurisdiction over the present appeal.

"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Heyward* v. *Judicial Dept.*, 159 Conn. App. 794, 799–800, 124 A.3d 920 (2015).

"An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . That the present matter arises postjudgment does not affect that analysis: the final judgment rule still applies." (Citations omitted; internal quotation marks omitted.) *Ricketts* v. *Ricketts*, 203 Conn. App. 1, 4–5, 247 A.3d 223 (2021); id., 5 (citing well established two part test of appealability set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983)).

"General Statutes §§ 52-102[7] and 52-107[8] govern the intervention of nonparties to an action and provide

[7] "General Statutes § 52-102 provides in relevant part: 'Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein . . . .' " *BNY Western Trust* v. *Roman*, 295 Conn. 194, 203 n.6, 990 A.2d 853 (2010).

[8] "General Statutes § 52-107 provides: 'The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other

for both permissive intervention and intervention as a matter of right. . . . Therefore, under the second prong of *Curcio*, whether the trial court's action on a motion to intervene is appealable depends on whether intervention is an absolute right or a matter within the trial court's discretion. . . . [A]n unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless he can make a colorable claim to intervention as a matter of right.[9] If he does make such a colorable claim, on appeal the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention.[10] . . .

"In order for a proposed intervenor to establish that it is entitled to intervene as a matter of right, the proposed intervenor must satisfy a well established four element conjunctive test: [T]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately

---

parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party.' Accord Practice Book § 9-18; see also General Statutes § 52-108 and Practice Book § 9-19 (allowing new parties to be brought in)." *BNY Western Trust* v. *Roman*, 295 Conn. 194, 203–204 n.7, 990 A.2d 853 (2010).

[9] See *King* v. *Sultar*, 253 Conn. 429, 435–36, 754 A.2d 782 (2000) (reasserting that denial of motion to intervene filed by person with colorable claim to intervention as matter of right is final judgment for purposes of appeal and holding that proposed intervenor has party status for purposes of § 52-263).

[10] "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the [proponent of the claim] need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.) *In re Santiago G.*, supra, 325 Conn. 231.

by any party to the litigation. . . . A proposed interve-nor must allege sufficient facts, through its motion to intervene and the pleadings, to make the requisite show-ing of its right to intervene. . . . No additional testi-mony or evidence is required. . . . Failure to meet any one of the four elements, however, will preclude inter-vention as of right." (Citations omitted; footnotes added; footnotes in original; footnotes omitted; internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, 295 Conn. 194, 203–206, 990 A.2d 853 (2010). For purposes of determining the jurisdictional issue, we apply a plenary scope of review as to whether all four elements have been met. Id., 207–208 n.12.[11]

Baotou's motion for intervention in the present mat-ter is atypical in that it was filed after the court rendered a final judgment of possession and sought only to inter-vene in postjudgment proceedings regarding distribu-tion of use and occupancy payments. Regardless of the precise procedural posture of the motion, however, when we consider the four elements of the test for intervention as of right, we are persuaded not only that Baotou demonstrates a colorable claim of intervention as of right such that the denial of its motion was a final judgment for purposes of appeal, but also that the court improperly denied the motion to intervene on its mer-its.[12] Because the same four factor test applies both to the jurisdictional question and to our consideration of the merits of the motion to intervene; see *In re Santiago G.*, supra, 325 Conn. 231–32; for brevity sake, we com-bine our analysis of the four factors.

---

[11] Our Supreme Court has clarified that "[t]he denial of a motion to inter-vene as of right raises a question of law and warrants plenary review, whereas a denial for permissive intervention is reviewed with an abuse of discretion standard." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 454 n.10, 904 A.2d 137 (2006).

[12] Because we conclude that the court should have permitted Baotou to intervene as a matter of right, we do not consider the issue of permissive intervention.

The first element of the test is whether the motion to intervene was timely. "Whether a motion to intervene is timely involves a determination of how long the intervenor was aware of an interest before he or she tried to intervene, any prejudicial effect of intervention on the existing parties, any prejudicial effect of a denial on the applicant and consideration of any unusual circumstances either for or against timeliness. . . . Factors to consider also include the nature of the interest and the purpose for which the intervenor is seeking to be brought into the action. . . . [T]here are no absolute ways to measure timeliness . . . ." (Internal quotation marks omitted.) *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 649, 81 A.3d 200 (2013).

Here, Baotou's motion to intervene was timely.[13] The motion to intervene was filed with the trial court during the pendency of the appeal from the judgment of possession for the express purpose of vindicating rights pursuant to § 47a-35b, which governs the distribution of accrued use and occupancy payments following an appeal. Because the trial court was not required to hold a hearing in accordance with § 47a-35b until "final disposition of the appeal," and Baotou filed its motion to intervene while the appeal was still pending, the motion was clearly timely.

The second and third elements of the test ask whether the proposed intervenor has a direct and substantial interest in the subject matter of the litigation and

---

[13] Ordinarily, the timeliness of a motion would be an issue of fact for the trial court that we would review on appeal under a clearly erroneous standard. See *Alves* v. *Giegler*, 348 Conn. 364, 385, 306 A.3d 455 (2024). In the present case, however, the court made no findings regarding the timing of the motion, and no one has raised a claim of untimeliness. The facts surrounding the timing of the motion, however, are not in dispute. Under these unique circumstances, it is appropriate for us to reach a conclusion regarding the timeliness of the motion as a matter of law on the basis of the undisputed facts in the record, both as to the threshold jurisdictional inquiry and with regard to the merits of the motion to intervene.

whether that interest would be impaired by a disposition without the involvement of the proposed intervenor. Because these factors are analytically related, we consider them together. See *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 812, 793 A.2d 260 (2002).

"Intervention allows one who was not a party in an original action to become a party upon his request. He has a derivative role by virtue of an action already shaped by the original parties. He takes the controversy as he finds it and may not introduce his own claims to restyle the action. . . . This is all the more true where a statute allows intervention for a specified purpose." (Citation omitted; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 154, 788 A.2d 1158 (2002). Here, although § 47a-35b does not expressly provide for the intervention of interested parties, it tasks the trial court with holding "a hearing to determine the amount due each party from the accrued payments . . . ." The statute contains no language indicating that only the current parties to the summary process action may participate in the distribution proceedings. See General Statutes § 47a-35b; *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 632, 858 A.2d 703 (2004) (despite use of term "party" in statute authorizing statutory proceeding, nonparty intervention was permitted in absence of express contrary indication). Both common sense and judicial economy dictate that an outside entity with a demonstrable claim to a share of the distribution should be permitted to intervene in order to fulfill the purpose of the statute: an equitable distribution of the accrued payments.

In their oppositions to the motion to intervene, neither the plaintiff nor the defendants contested Baotou's assertion that it has a contractual right to the use and occupancy payments by virtue of Patriot Bank's assignment of the loan documents, including the assignment

of leases and rents. Moreover, neither party to the underlying action has participated in the present appeal to raise such an argument. In short, not only does Baotou have a direct right to the subject matter of the postjudgment litigation at issue, that right is also a substantial one, as reflected in the amount of the accumulated use and occupancy payments at issue: $336,000.

Moreover, Baotou's interest would likely be impaired by any disposition in which it was not permitted to participate. Section 47a-35b expressly provides that the court's distribution of the accumulated use and occupancy payments "shall be conclusive," suggesting that Baotou's exclusion from the distribution proceeding could prove fatal, or at the least impair, any later attempt to assert a right to the distributed funds. Even if it were able to later establish in the foreclosure action that it is entitled under the loan documents to any distribution made to the plaintiff, it is uncertain, given the plaintiff's alleged default on the mortgage debt, that Baotou would be able to recover the distributed funds. The fact that Baotou possibly could vindicate its rights to the use and occupancy payments by instituting another lawsuit is not pertinent to whether it should be permitted to intervene now given that our "rules of intervention should be liberally construed, in order to avoid multiplicity of suits and settle all related controversies in one action." (Internal quotation marks omitted.) *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 838–39, 826 A.2d 1102 (2003). On balance, we conclude that the second and third elements of the four part test are met.

Finally, the fourth element of the test is whether the interest of the proposed intervenor can be represented adequately by any existing party to the litigation. "The burden for establishing inadequate representation of similar interests is minimal. Indeed, the United States Supreme Court has acknowledged that one successfully

establishes inadequate representation if the applicant shows that representation of his interest *may* be inadequate . . . . The particular circumstances of each case will dictate whether the absentee has an interest different from that of an existing party, and doubts should be resolved in favor of intervention." (Citation omitted; emphasis added; internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 149–50, 758 A.2d 916 (2000). "[A] presumption of inadequacy arises when an absentee must rely on his opponent or one whose interests are adverse to his." Id., 149. Baotou's interest in the use and occupancy payments is clearly adverse to both the plaintiff and the defendants. A distribution of the accumulated funds to either the plaintiff or the defendants obviously would deprive Baotou of the funds and, as discussed, likely would give rise to further legal action. Accordingly, the existing parties would not adequately protect Baotou's interest in obtaining the use and occupancy payments. Thus, the fourth element is satisfied.

The trial court, in denying the motion to intervene, did not engage in an analysis utilizing the appropriate four factor test. Instead, the primary reason given by the court for not permitting Baotou to intervene in the postjudgment proceedings was Baotou's lack of any present possessory interest in the property that was the subject of the eviction action. This was far too narrow of a lens, or perhaps the wrong lens entirely, through which to view Baotou's request for intervention. As a party with a clear and undisputed interest in the distribution of the accrued use and occupancy payments, Baotou had an absolute right to intervene.

"The underlying purpose of a § 47a-35b proceeding is to place some obligation on a nonpaying tenant to provide a property owner with surety against further financial losses while the summary process judgment

is being considered on appeal. . . . A proceeding to order the distribution of funds held by the court in a summary process action under § 47a-35b is properly limited to those claims related to the use and occupancy of the premises during the pendency of the appeal." (Citation omitted; internal quotation marks omitted.) *Rock Rimmon Grange #142, Inc.* v. *Bible Speaks Ministries, Inc.*, 112 Conn. App. 1, 7, 961 A.2d 1012 (2009). "[T]he evident purpose of the statute was to authorize the court to settle equitably the many disputes which may arise during the pendency of the proceeding *not necessarily related to the merits of the action.*" (Emphasis added; internal quotation marks omitted.) Id., 6. In other words, a § 47a-35b hearing is unrelated to the determination of the possessory interests in the property in a summary process action. Rather, in the present case, it involves a dispute that falls outside of the merits of the eviction action, one that is between primarily the plaintiff and Baotou over who should receive the benefit of the use and occupancy payments made by the defendants during their unsuccessful appeal.

In *MFS Associates, Inc.* v. *Autospa Realty Corp.*, 19 Conn. App. 32, 560 A.2d 484 (1989), this court construed an analogous statute, General Statutes § 47a-26f,[14] which governs the distribution of use and occupancy payments paid into court during the pendency of an eviction action rather than following an appeal in lieu of bond. Id., 33 n.1, 35; see also *Rock Rimmon Grange #142, Inc.* v. *Bible Speaks Ministries, Inc.*, supra, 112 Conn. App. 5 (§§ 47a-26f and 47a-35b are "nearly identical in language and purpose"). In *MFS Associates, Inc.*,

---

[14] General Statutes § 47a-26f provides: "After entry of final judgment, the court shall hold a hearing to determine the amount due each party from the accrued payments for such use and occupancy and order distribution in accordance with its determination. Such determination shall be based upon the respective claims of the parties arising during the pendency of the proceedings after the date of the order for payments and shall be conclusive of such claims only to the extent of the total amount distributed."

after the trial court had dismissed the summary process action for lack of subject matter jurisdiction, the defendant tenant moved for disbursement of the use and occupancy payments that it had paid into court during the pendency of the action. *MFS Associates, Inc.* v. *Autospa Realty Corp.*, supra, 34. The trial court granted the motion, and the plaintiff landlord appealed. Id. This court held that the trial court improperly had ordered the funds disbursed to the defendant simply because the action had been dismissed for lack of subject matter jurisdiction. Id., 35. This court further concluded that a proceeding for disbursement of use and occupancy funds paid into court by a tenant during the pendency of a summary process action "is a *statutory proceeding separate and distinct from the summary process action that it follows*." (Emphasis added.) Id.

Given the nearly identical language and purpose of § 47a-35b, we are convinced that the statutorily prescribed hearing to distribute use and occupancy payments made during the pendency of an appeal from a judgment of possession in a summary process action is also a separate and distinct proceeding from the underlying eviction action. Accordingly, Baotou's possessory interest in the property was not a proper consideration in determining whether to grant the motion to intervene; the relevant question was whether Baotou had a sufficient interest in the separate and distinct distribution proceeding. Baotou's interest is apparent on this record, and, therefore, the court improperly denied its motion to intervene as a matter of right.

The judgment is reversed and the case is remanded with direction to grant Baotou's motion to intervene and for further proceedings in accordance with § 47a-35b.

In this opinion the other judges concurred.