# ELIZABETH KERRIGAN ET AL. *v.* COMMISSIONER OF PUBLIC HEALTH ET AL.
## (SC 17563)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.*

Argued February 9—officially released August 15, 2006

* The listing of justices reflects their seniority status on this court as of the date of argument.

*Vincent P. McCarthy*, with whom was *Kristina J. Wenberg*, for the appellant (proposed intervenor Family Institute of Connecticut).

*Kenneth J. Bartschi*, with whom were *Bennett Klein*, pro hac vice, and, on the brief, *Annette Lamoreaux, Lori Rifkin, Karen L. Dowd, Maureen Murphy* and *Mary L. Bonauto*, pro hac vice, for the appellees (plaintiffs).

*Gregory T. D'Auria*, associate attorney general, with whom were *Robert W. Clark*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellees (defendants).

*Opinion*

NORCOTT, J. In this appeal, we consider whether the trial court properly denied the motion of the proposed intervenor, the Family Institute of Connecticut (institute), to intervene as a party defendant in this declaratory judgment action brought by the plaintiffs, seven same sex couples,[1] against, among others, the defendant

---

[1] The plaintiffs are: (1) Elizabeth Kerrigan and Joanne Mock; (2) Janet Peck and Carol Conklin; (3) Geraldine Artis and Suzanne Artis; (4) Jeffrey Busch and Stephen Davis; (5) Jane Ellen Martin and Denise Howard; (6) John Anderson and Garrett Stack; and (7) Barbara Levine-Ritterman and Robin Levine-Ritterman.

department of public health (department),[2] challenging the constitutionality of Connecticut's marriage laws insofar as they preclude the issuance of marriage licenses to same sex couples. On appeal,[3] the institute, a public policy organization that supports heterosexual

[2] Also named as defendants in this case are J. Robert Galvin, in his official capacity as commissioner of public health, and Dorothy Bean, deputy and acting town clerk and registrar of vital statistics of the town of Madison. We note that Bean has adopted the brief filed by the department and Galvin. Hereafter, we refer to the defendants individually by name and collectively as the defendants.

[3] The institute appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

We note briefly, sua sponte, the basis for our continued subject matter jurisdiction over this appeal because, under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), "an unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless he can make a colorable claim to intervention as a matter of right. If he does make such a colorable claim, on appeal the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention." *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985); accord, e.g., *King* v. *Sultar*, 253 Conn. 429, 435–36, 754 A.2d 782 (2000). Having reviewed the present case, we are satisfied that the institute has made a "colorable claim to intervention as a matter of right," and that we, therefore, properly have jurisdiction over this interlocutory appeal.

Moreover, we also note that, while this appeal was pending before this court, on July 12, 2006, the trial court issued a memorandum of decision granting the defendants' motion for summary judgment. This event raises mootness concerns with respect to the institute's appeal from the trial court's denial of its motion to intervene in light of this court's decision in *Jones* v. *Ricker*, 172 Conn. 572, 576–77, 375 A.2d 1034 (1977), wherein this court dismissed as moot the proposed intervenors' appeal from the trial court's denial of their motion to intervene in a mandamus action because that underlying litigation had been resolved by stipulation by the time that they filed their appeal. We conclude, however, that the present case is distinguishable from *Jones* because effective relief still can be granted to the institute if it prevails in this appeal. See *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 807–808, 793 A.2d 260 (2002) (subsequent property owner's appeal from denial of motion to intervene not rendered moot by judgment in underlying tax appeal because effective relief could be granted as further trial court proceedings were not necessary and judgment could be opened and amended). Specifically, relief is still available to the institute because the plaintiffs filed an appeal to the Appellate

marriage as the ideal environment for raising children, claims that the trial court should have permitted it to intervene in this litigation as a matter of right, or in the alternative, permissively. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. In August, 2004, the seven plaintiff couples went separately to the office of the defendant Dorothy Bean, the deputy and acting town clerk and registrar for vital statistics of the town of Madison, and requested applications for marriage licenses. An employee acting on Bean's behalf stated that, in accordance with an opinion authored by the attorney general dated May 17, 2004, she could not issue them marriage licenses. Thereafter, the plaintiffs commenced this action, claiming that, to the extent that any statute, regulation or common-law rule precludes otherwise qualified individuals from marrying because they wish to marry someone of the same sex, or are gay or lesbian couples, such statutes, regulations and common-law rules violated numerous provisions of the Connecticut constitution. The plaintiffs requested a declaratory judgment to this effect, as well as injunctions ordering: (1) Bean to issue marriage licenses to the plaintiffs upon proper completion of the applications; and (2) the department "to take any and all steps necessary to effectuate the [c]ourt's declaration, including register-

Court from the judgment of the trial court on July 28, 2006. If the institute prevails in this appeal from the denial of its motion to intervene, we will direct judgment that would make it a party at the trial court level, which accordingly would make it a party to that appeal of the trial court's decision on the merits of this case. See Practice Book § 60-4. This is effective relief because, as a party-appellee to a pending appeal, the institute will then be entitled to the full panoply of rights afforded to a party rather than an amicus curiae, such as the right to file a thirty-five page brief as a matter of right and to participate at oral argument. Compare Practice Book §§ 67-3 (briefing) and 70-4 (oral argument) with Practice Book § 67-7 (amicus curiae procedures).

ing such marriages upon proper return." The defendants answered the complaint with general denials.

Shortly after the plaintiffs filed the complaint, the institute moved, pursuant to General Statutes § 52-107,[4] and Practice Book § 9-18,[5] to intervene in the case as a matter of right, or in the alternative, permissively. According to the motion papers, which include an affidavit from the institute's executive director, Brian Brown, the institute is a nonpartisan, nonprofit, tax exempt "public policy organization whose purpose is to help make Connecticut as family-friendly as possible. . . . [The institute] places a strong emphasis on education, and networks with pro-family groups around . . . Connecticut and throughout the nation." Brown alleged that the institute "foresees a restored consensus that the family consists of people related by marriage, birth or adoption, and which recognizes the vital role of both mother and father in nurturing and supporting children . . . ."[6] The institute sought to intervene in order to

[4] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

[5] Practice Book § 9-18 provides: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party."

[6] The institute also advocates in support of: (1) "a community committed to racial reconciliation and compassion for all families, especially single-parent and needy families"; (2) "a society committed to helping family, church, synagogue and community meet the needs of its members without undue dependence upon government"; and (3) "a culture that recognizes the indisputable link between the sanctity of life at every stage and the dignity of every person."

"strengthen traditional families and uphold the ideal of a father, mother and child family which has been the ideal family for thousands of years." It also sought "to assist the [c]ourt in its deliberations of important issues through the experience and expertise of [the institute's] members in the area of traditional marriage and raising children in a traditional marriage."

The institute subsequently supplemented its motion with additional papers arguing that the defendants' answering of the complaint without first filing a motion to strike demonstrated their "unwillingness to aggressively defend the marriage statutes," because "truly adversarial defendants would have filed motions to strike the complaint where, as here, there is no existing Connecticut law supportive of the plaintiffs' constitutional claims. The failure of the [s]tate defendants to file motions to strike demonstrates that they do not adequately represent the interests of [the institute]." The supplemental papers further noted that, the "failure (or refusal) of the [s]tate defendants to test the legal sufficiency of the complaint by moving to strike raises an inference that they are sympathetic to [the] [p]laintiffs' desire for same-sex marriage, and thus 'friendly' to [the] [p]laintiffs.[7] If this is true, this case is not truly adversarial among the existing parties, a vital component of our system of jurisprudence."

The trial court denied the institute's motion to intervene in a comprehensive memorandum of decision. With respect to intervention as a matter of right, the trial court concluded that, "[w]hatever the outcome of this litigation, it is manifest that no legal interest of [the institute] will be affected thereby. Moreover, [the institute] has failed to demonstrate that it has any interest at stake that is different from any other individual

---

[7] The institute noted in particular that the website of Bean's attorney advertised that her practice areas include domestic partnership law.

or entity that has a strongly held view about the subject matter of this litigation. . . . [The institute] has no interest to assert that is any different from any member of the public at large who may have an opinion about important political and social issues of the day. The fact that [the institute] might be more articulate, vocal, passionate or organized in expressing its view does not confer upon it a legal interest of any kind."

The trial court also denied the institute's motion for permissive intervention, concluding that, "[w]ithout some interest different from that of any number of individuals or organizations with an opinion on the subject of same sex marriage, the grant of intervention to [the institute] would open the doors to intervention by any number of other proposed intervenors with a similar or opposing view, creating a vast and unwieldy lawsuit that would ill serve the real interests of the plaintiffs and defendants already in the case."[8] The trial court noted, however, that the submission of amicus curiae briefs by public policy organizations at an "appropriate time" might be "helpful to the court in determining one or more of the ultimate issues to be decided." The trial court rendered judgment accordingly, and this appeal followed.[9]

---

[8] The trial court further rejected the institute's claim that the attorney general was inadequately defending the statutes' constitutionality, noting that the more aggressive litigation strategy proffered by the institute "merely reinforces the court's finding that an order permitting intervention by the [institute] would likely create 'delay in the proceedings or other prejudice to the existing parties' in this lawsuit."

[9] We note that Patricia J. Grassi and Nancy J. O'Connor, the town clerks of Canterbury and Scotland, respectively (clerks), also filed motions to intervene in this case, claiming that a judgment for the plaintiffs would "conflict with their sincerely-held religious belief that marriage is limited to the joining of one man to one woman, and force them into making a Hobson's choice of either resigning their elected offices or violating their conscience" by having to issue marriage licenses to same sex couples. The trial court denied the clerks' motion to intervene. The clerks appealed from that denial, but subsequently withdrew that appeal on January 20, 2006, after briefing, but before oral argument.

Before turning to the institute's specific claims on appeal, we note the applicable standard of review. The institute and the defendants, citing the Appellate Court decision in *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 142, 758 A.2d 916 (2000), contend that the trial court's denial of a motion to intervene as a matter of right is subject to plenary review. The plaintiffs claim, however, that *Rosado* is inconsistent with precedent from this court, specifically *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 747–48, 699 A.2d 73 (1997), wherein this court applied the abuse of discretion standard of review to the trial court's determination that two parties claiming a right to redemption could not intervene as of right in a foreclosure action. Although all parties' case citations are accurate, we now conclude that the analytical distinction between the two different types of intervention, specifically, permissively and as of right, requires us to review de novo the trial court's determination as to the nature and extent of the interests at issue in a motion for intervention as a matter of right.[10] See *Horton* v. *Meskill*,

[10] In so concluding, we follow the Appellate Court's decision in *Rosado*, wherein that court relied on the standard of review articulated by the Court of Appeals for the Fifth Circuit in *Edwards* v. *Houston*, 78 F.3d 983, 1000 (5th Cir. 1996), and stated that, "[t]he denial of a motion to intervene as of right raises a question of law and warrants plenary review, whereas a denial for permissive intervention is reviewed with an abuse of discretion standard." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 142. In so holding, the Appellate Court in *Rosado* correctly sought guidance from federal cases applying rule 24 of the Federal Rules of Civil Procedure in articulating this standard of review. See, e.g., *Horton* v. *Meskill*, 187 Conn. 187, 192, 445 A.2d 579 (1982). That court's choice of circuit was significant because it is well established in the Second Circuit, whose precedents we ordinarily look to first with respect to cases applying federal law, that a trial court's decision on a motion to intervene, whether permissively or as a matter of right, is reviewed for abuse of discretion. See, e.g., *Patricia Hayes Associates, Inc.* v. *Cammell Laird Holdings*, 339 F.3d 76, 80 (2d Cir. 2003). In this context, however, we find persuasive the analytical distinction between permissive intervention and intervention as a matter of right, and part company from both the Second Circuit and our own prior decision in *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 747–48.

187 Conn. 187, 191–92, 445 A.2d 579 (1982) ("The distinction between intervention of right and permissive intervention, such as is found in Rule 24 of the Federal Rules of Civil Procedure, has not been clearly made in Connecticut practice. . . . Most of our cases discuss the admission of new parties as coming within the 'broad discretion' of the trial court. . . . But there are also cases which make clear that intervention of right exists in Connecticut practice." [Citations omitted.]). In addition to accommodating the "direct and substantial interests" implicated by a motion to intervene as a matter of right, the less restrictive de novo standard of review is more consistent with the nature of the relevant inquiry taken to evaluate such a claim, which is confined to a review of the relevant pleadings, with all allegations therein taken as true. *Washington Trust Co.* v. *Smith*, supra, 746. Thus, to the extent that *Washington Trust Co.* stands for the proposition that, other than a matter of timeliness, a trial court's decision on the merits of a party's motion to intervene as a matter of right, and specifically the nature and extent of the rights at issue, is subject to review for abuse of discretion, it is overruled.[11]

## I

We now turn to the institute's claim that the trial court improperly denied its motion to intervene as a matter of right. Specifically, the institute contends that the trial court improperly concluded that: (1) it does not have a sufficiently significant interest in the outcome of the litigation, and that denial of the motion to intervene would not impair the institute's ability to protect its

---

[11] In *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 744, we also followed case law holding that the trial court's initial determination of the *timeliness* of a motion to intervene as a matter of right is subject to review for abuse of discretion. Because the timeliness of the institute's motion is not at issue in this appeal, we need not reconsider the standard of review applicable to the trial court's initial determination of timeliness.

interests; and (2) the present defendants, who are represented by the attorney general pursuant to General Statutes § 3-125,[12] will adequately represent the institute's interests. In response, both the plaintiffs and the defendants contend that the trial court properly denied the institute's motion to intervene as a matter of right because: (1) the institute's interest is not sufficiently direct or personal, but rather is one of generalized interest in public policy; and (2) the institute has failed to defeat the presumption that the attorney general is adequately conducting the defense of the marriage statutes. We agree with the plaintiffs and the defendants.

The four element, conjunctive inquiry governing the decision on a motion for intervention as a matter of right is aptly summarized in *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 134. Specifically, "[t]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any

[12] General Statutes § 3-125 provides in relevant part: "The Attorney General shall have general supervision over all legal matters in which the state is an interested party, except those legal matters over which prosecuting officers have direction. He shall appear for the state . . . and for all heads of departments and state boards, [and] commissioners . . . in all suits and other civil proceedings, except upon criminal recognizances and bail bonds, in which the state is a party or is interested, or in which the official acts and doings of said officers are called in question . . . in any court or other tribunal, as the duties of his office require; and all such suits shall be conducted by him or under his direction. . . . All legal services required by such officers and boards in matters relating to their official duties shall be performed by the Attorney General or under his direction. All writs, summonses or other processes served upon such officers and legislators shall, forthwith, be transmitted by them to the Attorney General. All suits or other proceedings by such officers shall be brought by the Attorney General or under his direction. . . ."

party to the litigation." Id., 140; accord *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 631, 858 A.2d 703 (2004); *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 745–48; *Horton* v. *Meskill*, supra, 187 Conn. 191–96.

"For purposes of judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion for leave to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on motion to intervene, at least in the absence of sham, frivolity, and other similar objections." (Internal quotation marks omitted.) *Washington Trust Co.* v. *Smith*, supra, 241 Conn. 746. Thus, neither testimony nor other evidence is required to justify intervention, and "[a] proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." Id., 747.

It is undisputed that the institute's motion to intervene satisfies the first element of timeliness. Accordingly, we turn to the second element, namely, whether the trial court properly concluded that the institute lacked a sufficient interest in this litigation to be entitled to intervene as a matter of right. "An applicant for intervention has a right to intervene . . . where the applicant's interest is of such a direct and immediate character that the applicant will either gain or lose by the direct legal operation and effect of the judgment." (Internal quotation marks omitted.) *Horton* v. *Meskill*, supra, 187 Conn. 195. "[A] person or entity does not have

a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him, her, or it. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another." Id.

Having reviewed the facts set forth in the motion papers, we conclude that the institute has not identified an interest of "direct and immediate character" that will cause it to gain or lose anything as a result of the judgment in this case. Indeed, the institute has not *alleged,* much less demonstrated, that a judgment in this case will affect any specific right or interest possessed by it or its members. See *Washington Trust Co.* v. *Smith,* supra, 241 Conn. 747–48 (concluding that parties claiming right to redemption, one through possession of leasehold interest and other through having purchased equity of redemption, should have been permitted to intervene as defendants in foreclosure action); *In re Baby Girl B.,* 224 Conn. 263, 275–76, 618 A.2d 1 (1992) ("Here, the only legal interests at stake in the termination proceeding were the mother's parental rights. Although the preadoptive parents may have been affected by the court's judgment in the termination proceeding, they had no legal interest at stake that would entitle them to intervene."); see also *Grutter* v. *Bollinger,* 188 F.3d 394, 399–400 (6th Cir. 1999) (minority students should have been permitted to intervene in action challenging state university's admissions policies because they had "enunciated a specific interest in the subject matter of this case, namely their interest in gaining admission to the [u]niversity," and "[t]here is little room for doubt that access to the [u]niversity for African-American and Latino/a students will be impaired to some extent and that a substantial decline in the enrollment of these students may well result if the [u]niversity is precluded from considering race as a factor in admissions"); *San Francisco* v. *State,* 128 Cal. App. 4th 1030, 1038–39, 27 Cal. Rptr. 3d 722

(organization created to defend initiative leading to leg-islation precluding same sex marriage lacked interest sufficient to justify permissive intervention when it did "not claim a ruling about the constitutionality of deny-ing marriage licenses to same-sex couples will impair or invalidate the existing marriages of its members, or affect the rights of its members to marry persons of their choice in the future"), review denied, 2005 Cal. LEXIS 8002 (July 20, 2005).

A comparison of the Appellate Court decisions in *State Board of Education* v. *Waterbury*, 21 Conn. App. 67, 571 A.2d 148 (1990), and *Polymer Resources, Ltd.* v. *Keeney*, 32 Conn. App. 340, 629 A.2d 447 (1993), is illustrative on this issue. In *State Board of Education* v. *Waterbury*, supra, 73, the court concluded that a parent-teacher organization and individual parents had sufficient interest to intervene in a mandamus action compelling a city to implement a school desegregation plan because, "what can be more direct and personal than the interest of the parent of a school child in the subject matter of this mandamus action—namely, compelling the implementation of the proposed plan for a desegregated school in the Maloney School dis-trict?" By contrast, in *Polymer Resources, Ltd.* v. *Keeney*, supra, 351, the Appellate Court concluded that a neighborhood environmental organization could not intervene as a matter of right in a civil rights action brought by a local manufacturing plant against the department of environmental protection because, "[a]lthough the resolution of [the manufacturer's] civil rights claim might *theoretically* have an effect on [the environmental group, its] interest in the impending judgment was not sufficiently direct or personal to require intervention . . . ." (Emphasis added.) Id., 349–51.

The institute's reliance on *State Board of Education* is misplaced because its interest in the present case is

not nearly as direct and personal as that of a parent seeking to ensure the proper implementation of a deseg-regation plan at his or her child's school. Rather, the only interest that the institute has established in the present case is that of a generalized public policy organi-zation far more akin to the neighborhood environmental organization in *Polymer Resources, Ltd.* Put differently, all the institute has established in this case is its strong and capable commitment to championing a particular cause,[13] which the trial court properly concluded was insufficient to require its intervention as a matter of right.[14]

---

[13] The institute's reliance on *Utah Assn. of Counties* v. *Clinton,* 255 F.3d 1246 (10th Cir. 2001), also is unavailing. In that case, the Tenth Circuit Court of Appeals concluded that the District Court should have permitted several environmental organizations to intervene as a matter of right in an action brought to declare illegal a presidential proclamation establishing an environ-mentally protected national monument area, thus precluding the develop-ment of a mine within that area. Id., 1248–49. The court followed "numerous cases in which environmental organizations and other special interest groups have been held to have a sufficient interest for purposes of intervention as of right in cases in which their particular interests were threatened," finding "persuasive those opinions holding that organizations whose purpose is the protection and conservation of wildlife and its habitat have a protectable interest in litigation that threatens those goals." Id., 1252.

The Tenth Circuit decision in *Utah Assn. of Counties* is not controlling in the present case. First, we view it as limited to its factual context, namely, the environmental arena. Second, it is a Tenth Circuit case, and that court admittedly follows "a somewhat liberal line in allowing intervention." (Inter-nal quotation marks omitted.) Id., 1249; compare *United States* v. *Hooker Chemicals & Plastics,* 749 F.2d 968, 987–88 (2d Cir. 1984) (District Court properly denied environmental group's motion to intervene as of right under rule 24 of the Federal Rules of Civil Procedure in action brought by govern-ment under emergency powers provisions of Clean Water Act, Safe Drinking Water Act and Resource Conservation and Recovery Act because "interven-tion as of right in such actions is to be narrowly limited and requires a particularly strong showing of inadequate representation"). By contrast, when looking to federal courts for guidance, we typically turn first to deci-sions of the Second Circuit Court of Appeals. See, e.g., *Turner* v. *Frowein,* 253 Conn. 312, 341, 752 A.2d 955 (2000).

[14] Inasmuch as the applicable test is conjunctive; see, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.,* supra, 60 Conn. App. 134; and the institute has failed to satisfy the interest factor, we need not address the

## II

In the alternative, the institute claims that the trial court abused its discretion by not permitting it to intervene permissively. Specifically, the institute appears to argue that, with respect to its permissive intervention claim, the trial court engaged in an improper analysis of the " 'delay' " that might be caused by its intervention. We, however, read the trial court's decision as considering " 'delay in the proceedings or other prejudice to the existing parties' " as only a single factor in its analysis of the permissive intervention claim, rather than as an entirely separate ground for denying the motion to intervene, and will analyze the institute's claim accordingly.

A trial court exercising its discretion in determining whether to grant a motion for permissive intervention balances "several factors [including]: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of representation of such interests by other parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy [before the court]. . . . [A] ruling on a motion for permissive intervention would be erroneous only in the rare case [in which] such factors weigh so heavily against the ruling that it would amount to an abuse of the trial court's discretion." (Citations omitted; internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 226, 884 A.2d 981 (2005), quoting *Horton* v. *Meskill*, supra, 187 Conn. 197; see also *AT & T Corp.* v. *Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) ("[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so

parties' arguments with respect to the remaining elements for intervention as a matter of right.

seldom seen as to be considered unique" [internal quotation marks omitted]).

Even if we were to assume, arguendo, that the institute has an interest sufficient to justify permissive intervention, we conclude that the trial court nevertheless did not abuse its discretion by denying the motion for permissive intervention. Reviewing the other factors, the trial court reasonably could have determined that the institute's interest in defending the constitutionality of the marriage laws would be adequately represented by the attorney general, whose defense of state statutes is "presumed" to be adequate. *Horton* v. *Meskill*, supra, 187 Conn. 196 ("although an intervening municipality is not barred from defending the constitutionality of the financing system, such an interest could never justify intervention in a case such as the present one where the constitutionality of the statute is being defended directly by the state as represented by the attorney general"); see also, e.g., *New Mexico Right to Choose/ NARAL* v. *Johnson*, 126 N.M. 788, 796, 975 P.2d 841 (1998) (trial court improperly permitted individuals to intervene as taxpayers and to protect life of unborn in case attacking restriction of state funding for abortions because department of human services "is presumed to represent that interest adequately"), cert. denied sub nom. *Klecan* v. *New Mexico Right to Choose/NARAL*, 526 U.S. 1020, 119 S. Ct. 1256, 143 L. Ed. 2d 352 (1999). Indeed, the institute's attack on the adequacy of the attorney general's representation largely is confined to its assertion that his commitment to defending this case aggressively has been belied by his decision to answer the complaint, rather than test its legal sufficiency immediately by moving to strike. This is, however, merely a strategic disagreement, which has, in any event, been rendered moot by the fact that the defendants filed a motion for summary judgment in the trial court. The institute has, therefore, failed to demonstrate

inadequate representation, because "[i]f disagreement with an actual party over trial strategy, including over whether to challenge or appeal a court order, were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless."[15] *United States* v. *Board of Education*, 902 F.2d 213, 218 (2d Cir. 1990).

Moreover, with respect to the " 'necessity for or value of the intervention in terms of resolving the controversy [before the court]"; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 276 Conn. 226; the trial court recognized the import of the institute's expertise in this area, including its proffered scientific studies with respect to children who lack mother or father figures, by permitting it to participate as an amicus curiae.[16]

[15] We further reject the institute's claim that it is not adequately represented in this action because of its "unique position regarding the protection of Connecticut families and children." To the contrary, this is not a case involving a multiplicity of divergent interests that need to be represented separately because of different ways by which the merits might be resolved. As demonstrated by the plaintiffs' request for relief in their complaint, this is not a case that is subject to a variety of resolutions; either the marriage laws are constitutional, or they are not. This case is not, for example, *State Board of Education* v. *Waterbury*, supra, 21 Conn. App. 74, wherein the Appellate Court concluded that the intervention of school parents into a mandamus action enforcing a school desegregation plan was warranted because their interests might "compete with the interests of the state board of education, the commissioner of education and 'all the other citizens' of Connecticut. While the attainment of the ultimate goal, the realization of the school racial balancing plan, may be the same, the plaintiffs and the appellants may well be at odds with regard to the structure of settlement proposals, delays and concessions, which the current plaintiffs might be willing to afford the defendants, arguably to the detriment of the appellants' interest, and concern for the immediate implementation of the plan."

[16] The amicus brief filed by the institute in the trial court is more than thirty pages, a length that alone demonstrates the trial court's grace in permitting the involvement of the institute in this litigation. Cf. Practice Book § 67-7 (limiting amicus briefs to no more than "ten pages unless a specific request is made for a brief of more than that length").

We further note that numerous other parties have filed similarly extensive amicus briefs in the trial court supporting either side of this case. The

Indeed, our review of the record demonstrates that the institute has filed an extensive amicus brief that contains ample references to those scientific studies.[17] The trial court properly balanced the parties' interest in the expeditious resolution of this action with its desire to avail itself of the institute's proffered expertise as to the merits of the controversy before the court, and did not, therefore, abuse its broad discretion by denying the institute's motion for permissive intervention.

The judgment is affirmed.

In this opinion the other justices concurred.

---

plaintiffs are supported by a single comprehensive brief filed by a variety of amici curiae, including, among others, the Asian American Legal Defense and Education Fund, Connecticut NOW, Connecticut AFL-CIO, Freedom to Marry, the Lambda Legal Defense and Education Fund, Love Makes a Family, the National Association of Social Workers, the National Council of Jewish Women, the Connecticut chapters of the Parents, Families and Friends of Lesbians and Gays, the Southern Poverty Law Center and the General Synod of the United Church of Christ. In addition to the institute's thirty-two page amicus brief, the defendants are supported by a thirty-two page brief filed by the Family Research Council, a thirty page brief filed by the Connecticut Catholic Conference, and a forty-seven page brief filed by the United Families of Connecticut.

With respect to the parties, the plaintiffs' principal memorandum of law in support of their motion for summary judgment was sixty-five pages, and their reply brief was forty pages. The defendants' response memorandum was seventy-four pages. We, therefore, disagree with the institute's claim, made at oral argument before this court, that the trial court's decision on the merits of the case, which was argued before that court on March 21, 2006, and decided on July 12, 2006, was somewhat less than fully informed.

[17] We note that an amicus brief is an acceptable means of presenting scientific studies to a court that might consider their impact in deciding a constitutional issue. See State v. Ledbetter, 275 Conn. 534, 569–70, 881 A.2d 290 (2005) (considering whether to adopt new standard under state constitution for determining reliability of eyewitness identification), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).