THE EPISCOPAL CHURCH IN THE DIOCESE
OF CONNECTICUT ET AL. *v.* RONALD
S. GAUSS ET AL.
(SC 18718)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued February 9—officially released October 11, 2011

*James H. Howard*, with whom was *Howard M. Wood III*, for the appellant (prospective intervenor Bishop Seabury Church).

*Alan Robert Baker*, with whom were *Michelle M. Seery* and, on the brief, *David Booth Beers*, and *Mary E. Kostel*, pro hac vice, for the appellees (plaintiffs).

*Opinion*

ZARELLA, J. This is the first of two appeals arising from a property dispute between members of a local parish and the church with which they were affiliated. The plaintiffs, The Episcopal Church in the Diocese of Connecticut (Diocese), the Reverend Canon David Cannon,[1] Bishop Seabury Church[2] (Parish), and The Protestant Episcopal Church in the United States of America (Episcopal Church),[3] brought this action

---

[1] Reverend Cannon was appointed "[p]riest in [c]harge" of Bishop Seabury Church by the Bishop of the Diocese of Connecticut on February 29, 2008.

[2] Bishop Seabury Church is a parish of the Diocese.

[3] The Episcopal Church joined this action as a plaintiff by way of a motion to intervene filed on June 6, 2008, which was granted on June 24, 2008.

against the defendants, Ronald S. Gauss[4] and twelve present or former officers or vestry members of the Parish who hold themselves out as continuing to serve in that capacity,[5] alleging breach of trust for the wrongful failure to relinquish to the plaintiffs all of the real and personal property of the Parish following a decision by a majority of the voting members of the Parish, including the defendants, to withdraw from the Diocese and to affiliate the Parish with the Convocation of Anglicans of North America (CANA), an ecclesiastical society that is not part of the Episcopal Church or the Diocese. The plaintiffs sought a declaration that the disputed property was held in trust for the Episcopal Church and the Diocese and an order enjoining the defendants and all those acting in concert with them or at their direction from their continued use of, or assertion of any rights to, the property. Thereafter, an unincorporated voluntary association describing itself as "Bishop Seabury Church" or, alternatively, as Bishop Seabury Memorial Church or Bishop Seabury Episcopal Church (association), attempted unsuccessfully to intervene in the action to protect its alleged ownership interest in the property. The association now appeals to this court, claiming that the trial court improperly denied its motion to intervene and its request for an evidentiary hearing. The plaintiffs respond that the trial

---

[4] Reverend Gauss served as an active, ordained priest of the Episcopal Church and as rector of the Parish prior to his retirement on December 1, 2007.

[5] The twelve present or former officers or vestry members are Richard Vanderslice, Arthur H. Hayward, Jr., Stanley Price, Deborah Gaudette, Kathy Tallardy, Barbara Stiles, Marion Ostaszewski, Shelley Steendam, Amy Ganolli, Debra Salomonson, James Conover and Everett Munro. Former Attorney General Richard Blumenthal also was named as a defendant because of his "interest in the protection of any gifts, legacies or devises intended for public or charitable purposes"; General Statutes § 3-125; and he appeared in the case, but neither he nor his successor has participated in the litigation to date. In the interest of simplicity, we refer to the twelve officers or vestry members and Gauss collectively as the defendants throughout this opinion.

court properly denied the association's motion and request. We agree with the plaintiffs and, accordingly, affirm the decision of the trial court.

The following facts are relevant to our resolution of this appeal. The plaintiffs filed their complaint on May 20, 2008. One of the plaintiffs is "Bishop Seabury Church," that is, the Parish. On July 11, 2008, the defendants filed a motion to dismiss the complaint on the ground that the Parish was not an authorized plaintiff. The defendants argued, inter alia, that the Parish did not have standing because (1) the real Bishop Seabury Church is an entity, or association, separate and distinct from any of the entities or persons identified as plaintiffs in the complaint, (2) the vast majority of its members are not parties to this action, (3) it existed as an independent entity before becoming a parish, (4) it retained its independence after becoming a parish, and (5) it never authorized the present action. In their argument in support of the motion, the defendants similarly contended that the Parish had "co-opt[ed] the identity of Bishop Seabury Church," which, they claimed, was an independent entity governed by its own bylaws that never had authorized the present action. On February 4, 2009, the trial court determined that the Parish had standing and denied the motion to dismiss.

On April 9, 2009, the defendants filed a motion to strike the complaint, arguing that the plaintiffs had failed to join an indispensable party, namely, "the voluntary association known as Bishop Seabury Church Society, an association of approximately 290 members located [in the town of Groton]." The defendants specifically argued that the complaint included allegations against, and that the plaintiffs sought to wrest control from, a society or congregation composed of lay members in possession and control of the property who were "acting in concert" with the defendants and that, because those members were not parties to the present

action, they were not receiving "due process" sufficient to bind them to any future court decree. (Internal quotation marks omitted.)

On June 11, 2009, the trial court denied the motion to strike. The court explained that it had taken the allegations in the complaint as true, as it had done when considering the defendants' motion to dismiss, and that the defendants' claim that there was a "Bishop Seabury Church Society" separate and distinct from the Parish was in conflict with the allegations in the complaint. The court observed that the defendants had pointed to no evidence that any other association had been formed by the alleged 280 members of the Bishop Seabury Church Society, and that the members of this society were not indispensable parties because there was nothing in the record indicating that they had a legal interest in the property or that the court could not resolve all of the disputed matters concerning the property without their participation.

On July 1, 2009, the defendants filed an answer, fifteen special defenses and a counterclaim. In their answer, the defendants denied any "characterization of the property as belonging to an entity other than the entities identified in the deeds . . . ." In their counterclaim directed against the Episcopal Church, the defendants alleged that they were "the vestry of Bishop Seabury Church" and that, "[i]n [their] capacity as members of the [Bishop Seabury] Church Society identified in the deeds attached to the plaintiffs' [c]omplaint, they [did] not believe that the Diocese or [t]he Episcopal Church [could] unilaterally control the real [property] occupied by the [Church] Society . . . ."

That same day, the association, represented by the same attorneys who were representing the defendants in the pending litigation, sought to intervene in the action as of right or, in the alternative, permissively,

under General Statutes § 52-107 and Practice Book § 9-18.[6] The association described itself as a religious association that had existed since the 1870s, consisting of approximately 700 individuals, of whom approximately 280 were voting members, and that it was moving to intervene to "defend its title to the property . . . ." The association specifically alleged that the entity identified by the plaintiffs as "Bishop Seabury Church" was not the entity identified in the deeds to the property but was a fictional entity created for the purpose of participating in the present litigation. The association also alleged that no current party to the litigation had title to the property in its name and that, because the association was the record owner of the property, it was an indispensable party. Furthermore, because the association was in possession and control of the property but was not currently under the court's jurisdiction, the association and its members could not be bound by any court orders connected with the litigation. Claiming that the case, as currently framed, could not resolve any issues involving title, possession or control of the property, the association requested permission to inter-

---

[6] In *BNY Western Trust* v. *Roman*, 295 Conn. 194, 203–204, 990 A.2d 853 (2010), we stated that "General Statutes §§ 52-102 and 52-107 govern the intervention of nonparties to an action and provide for both permissive intervention and intervention as a matter of right."

General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

Practice Book § 9-18 provides in relevant part: "The judicial authority may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the judicial authority may direct that they be brought in. If a person not a party has an interest or title which the judgment will affect, the judicial authority, on its motion, shall direct that person to be made a party. . . ."

vene as the entity identified in the deeds to the property so that it could assert a counterclaim for the purpose of quieting title and pursuing damages against the plaintiffs. A resolution that had been adopted the previous day by the elected officers of "Bishop Seabury Church Society" containing similar allegations was attached to the motion as "[e]xhibit A"[7] and was authenticated by the affidavit of Kathy Tallardy in her capacity as "[s]ecretary" of "Bishop Seabury Church," the same Kathy Tallardy named as one of the defendants by the plaintiffs in the action. Also attached to the motion, as "[e]xhibit B," was a copy of the association's most recent bylaws, dated January 20, 2008, reflecting its decision to become a parish under CANA and its self-described independence.

The plaintiffs opposed the motion to intervene on several grounds, including that the Parish was not a fictional entity created for the purpose of the litigation but had long existed as a subordinate unit of the Episco-

---

[7] Apparently, in response to the trial court's decision denying the defendants' motion to strike, in which it stated that there was no evidence in the record that any association had been formed with a legal interest in the property separate from that of the Parish, the defendants, among others, unanimously resolved on June 30, 2009, as "the elected officers and vestry of . . . Bishop Seabury Church Society" that "Bishop Seabury Church" was a "religious association" established in the 1870s. The resolution further stated that the association, which consisted of 700 individuals and approximately 280 voting members or adult communicants, was in possession and control of the "[c]hurch building and property," was not currently under the jurisdiction of the court or a party to the ongoing litigation and, because it was the owner, did not intend to relinquish possession and control of the property. The resolution also declared that record title was in the name of the association, there always has been, and there continues to be, only one religious association known as "Bishop Seabury Church," the property was not held in trust for any other entity, including the plaintiffs in the pending litigation, the entity identified in the litigation as the plaintiff "Bishop Seabury Church" was not Bishop Seabury Church, neither the members nor officers of "Bishop Seabury Church" had authorized any other person or entity to pursue a claim on its behalf as a plaintiff, and the entity identified by the plaintiffs as "Bishop Seabury Church Parish" was not the entity identified in the deeds to the property.

pal Church and, in that capacity, held title to the disputed property.

At the hearing on the motion, the attorney for the association, James H. Howard, introduced himself as representing the defendants as well as the association. Howard distinguished the defendants from the association by noting that the defendants had not asserted a claim of title because they were not identified individually in the deeds to the property, whereas the association was claiming title to the property as "Bishop Seabury Church," which was named in the deeds and thus was a necessary party. Howard explained that, because the plaintiffs were seeking possession of the property and there were hundreds of association members, but only thirteen defendants, it was "appropriate to have the people who are actually in possession" be involved in the litigation. In other words, simply issuing an order relating to twelve or thirteen individuals would not resolve the dispute. Howard further argued that the plaintiffs' claim of an implied trust could not be adequately litigated without consideration of the association's claim of record title to the property. He concluded with a request for an evidentiary hearing on the motion to explore these issues more fully. The plaintiffs' attorney responded that there was no dispute regarding title because there was only one entity that held title to the property, namely, the Parish, and that the issue came down to what entity had possession and the right to hold and control the assets of the Parish.

On October 13, 2009, the trial court denied the association's motion to intervene and request for an evidentiary hearing. The court first concluded that the issues raised by the association appeared to have been fully and fairly raised in the pleadings in light of the defendants' position that the Parish was a fictional entity without title or any right to possession of the property. The court further concluded that the association was

not seeking to intervene to assert a claim against the defendants or to defend against the claims of the plaintiffs but to assert a counterclaim against the plaintiffs and to "defend its title." (Internal quotation marks omitted.) According to the court, that purpose did not make the association a necessary party to the action, and, therefore, upon consideration of the parties' positions, the court was not inclined to allow permissive intervention. The court denied the request for an evidentiary hearing without further explanation. The association appealed from the trial court's decision to the Appellate Court on October 29, 2009.

On November 12, 2009, the defendants filed a "motion for continuance due to automatic stay." The defendants sought to stay further proceedings on the parties' respective motions for summary judgment and motions to strike the affidavits of their expert witnesses, which previously had been filed and were scheduled for argument.[8] The defendants contended that the association's appeal triggered an automatic stay pursuant to Practice Book § 61-11 (a)[9] and that any court orders during the period of the automatic stay would be vacated if the stay was not granted. The plaintiffs opposed the motion on the ground that Practice Book § 61-11 (a) did not apply to a nonparty's appeal from the denial of a motion to intervene. The trial court nonetheless denied the defendants' motion in an oral ruling on November 16, 2009, and the Appellate Court denied the defendants' motion for review of that ruling on February 3, 2010.

[8] The plaintiffs filed their motion for summary judgment on July 31, 2009. The defendants filed their motion for summary judgment on October 15, 2009.

[9] Practice Book § 61-11 (a) provides in relevant part: "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to take an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. . . ."

Proceedings continued on the summary judgment motions without participation by the association. The plaintiffs argued that there was no genuine issue of material fact as to whether the Parish was a subordinate unit within the hierarchy of the Episcopal Church, whether the property was held by the Parish in trust for the mission of the Episcopal Church and the Diocese and whether the property should have been relinquished when members of the Parish chose to affiliate with a different religious organization. The defendants responded that a genuine issue of fact existed with respect to all of the plaintiffs' claims and submitted as exhibits the same documents that the association had attached to its motion to intervene. In the defendants' motion for summary judgment, they reiterated the arguments asserted in their first and second special defenses, namely, that the plaintiffs' claims failed as a matter of law because the court was without the authority to adjudicate matters of church polity and because the claims were barred by the Marketable Title Act, General Statutes § 47-33b et seq. The defendants also made many of the same arguments that the association had made in its motion to intervene. These arguments included that the Diocese could not divest the local church of property in which it had record title and that the property was not held in trust for any other entity.

On March 15, 2010, the trial court rejected the defendants' special defenses, granted the plaintiffs' motion for summary judgment as to their complaint and the defendants' counterclaim, denied the defendants' motion for summary judgment and concluded that the Parish property was held in trust for the Episcopal Church and the Diocese. In addressing the defendants' second special defense, the court determined that the Marketable Title Act was inapplicable as a matter of law because "[w]hether a parish holds record title . . . is not dispositive of whether a trust agreement exists."

(Internal quotation marks omitted.) The court further noted that "[t]he plaintiffs do not seek to change the record title to the subject property but, rather, seek to obtain declaratory and injunctive relief regarding their right to possess this property premised on the relationship between the Parish . . . the Episcopal Church and [the] Diocese." The court also granted the plaintiffs injunctive relief, ordering the defendants to turn over possession, custody and control of the disputed property to the plaintiffs immediately, prohibiting the defendants from the continued use of and assertion of any rights to the property, ordering the defendants and all others acting under their control or direction not to interfere with the plaintiffs' right to immediate possession, custody and control of the property, and prohibiting the defendants and all others acting under their control or direction from wasting, selling, transferring, conveying or encumbering the property. The court also granted the plaintiffs permission to move for an order of accounting within sixty days. The court then rendered judgment for the plaintiffs in accordance with its decision on the motions.

On June 18, 2010, the defendants appealed from the trial court's judgment to the Appellate Court. On December 1, 2010, the defendants' appeal and the association's appeal from the denial of the motion to intervene were transferred to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The appeals were consolidated for the purpose of creating a single record and for oral argument but not for purposes of briefing. With this factual background in mind, we proceed to consider the association's appeal.

The association claims that the trial court improperly denied its motion to intervene as of right[10] because the

[10] "Intervention as of right provides a legal right to be a party to the proceeding that may not be properly denied by the exercise of judicial discretion." *BNY Western Trust* v. *Roman*, 295 Conn. 194, 204 n.8, 990 A.2d 853 (2010).

motion was timely filed, the association has a direct and substantial interest in the litigation, its interest would be impaired by disposition of the litigation without its involvement and its interest was not adequately represented by any other party to the litigation. The plaintiffs respond that the motion fails on all four grounds and that the trial court properly denied the motion. We agree with the plaintiffs that the trial court properly denied the motion.[11]

We begin with the governing legal principles. In moving to intervene as of right, the intervenor must satisfy four requirements. See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 456–57, 904 A.2d 137 (2006). The motion to intervene must be timely, the moving party must have a direct and substantial interest in the subject matter of the litigation, the moving party's interest must be impaired by disposition of the litigation without that party's involvement and the moving party's interest must not be represented adequately by any

---

[11] We note that, although the association requested permissive intervention and intervention as of right pursuant to General Statutes § 52-107 and Practice Book § 9-18, the only claim that the association raises on appeal is that the trial court improperly denied its request to intervene as of right. Accordingly, we do not consider whether the trial court improperly denied the motion insofar as the association was seeking permissive intervention. See, e.g., *Rector, Wardens & Vestrymen of Trinity-St. Michael's Parish, Inc.* v. *Episcopal Church in the Diocese of Connecticut*, 224 Conn. 797, 808 n.12, 620 A.2d 1280 (1993) (issue not briefed is deemed to be waived).

We also note that the trial court referred only to permissive intervention in stating in its decision on the motion to intervene that it was "not inclined" to allow intervention. We nonetheless conclude that the trial court's decision provided a sufficient basis for the association's claim on appeal because, despite the court's omission of any explicit reference to intervention as of right, its order denying the "foregoing motion to intervene by [the association]" implicitly refers to intervention as of right as well as permissive intervention because both were presented by the association as alternative grounds for the granting of the motion by virtue of its reference to § 52-107 and Practice Book § 9-18, and the plaintiffs do not claim on appeal that the trial court did not address the association's request for intervention as of right.

other party to the litigation. Id. If any one of these four requirements is not satisfied, intervention will not be granted. Id., 456, 458–59 (referring to "four element, conjunctive inquiry" and concluding that trial court properly denied intervention as of right because intervenor failed to establish direct and substantial interest in subject matter of litigation); see also *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 146, 148, 758 A.2d 916 (2000) (referring to fact that "test for intervention as of right is conjunctive" and that, if any one of four requirements is not met, motion to intervene must be denied).

"For purposes of judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion . . . to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true. The question on a petition to intervene is whether a well-pleaded defense or claim is asserted. Its merits are not to be determined. The defense or claim is assumed to be true on [a] motion to intervene, at least in the absence of sham, frivolity, and other similar objections. . . . Thus, neither testimony nor other evidence is required to justify intervention, and [a prospective] intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the [prospective] intervenor has a direct and immediate interest that will be affected by the judgment." (Citation omitted; internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 457. The trial court's decision on a motion for intervention as of right is subject to our plenary review.[12] Id., 454.

[12] In *BNY Western Trust* v. *Roman*, 295 Conn. 194, 207–208 n.12, 990 A.2d 853 (2010), we observed that the court in *Kerrigan* had determined that plenary review should be applied to three of the four prongs of the test for

Mindful of these principles, we conclude that the trial court properly denied the motion to intervene because the stated interests of the association were adequately represented by the defendants. Thus, we need not consider whether the remaining three requirements for intervention as of right were satisfied. See, e.g., *BNY Western Trust* v. *Roman*, 295 Conn. 194, 207 n.11, 990 A.2d 853 (2010) ("[b]ecause the applicable test for intervention as of right is conjunctive . . . and [the prospective intervenor] has failed to satisfy [one of the requirements to establish intervention as of right], we need not consider whether [it] has satisfied the remaining three [requirements]" [citation omitted]).

With respect to the requirement of adequate representation, we have explained that "[t]he most significant factor in assessing the adequacy of representation is how the interests of the absentees compare with the interests of the present parties; the weight of the would-be intervenors' burden varies accordingly. If, for instance, the interests are identical[13] or there is a party charged by law with representing a proposed intervenor's interest, a presumption of adequate representation arises that the would-be intervenor can overcome only through a compelling showing of why this representation is not adequate. . . . At the other end of the

intervention but that *Kerrigan* had left open the question of which standard of review should apply to the timeliness prong because that element was not at issue in *Kerrigan*. We then stated in *BNY Western Trust* that, although we were not required in that case to determine the applicable standard of review regarding the merits of the trial court's decision on timeliness, that prong was central to the final judgment question, and, therefore, plenary review should be applied to the timeliness prong "for purposes of the threshold jurisdictional inquiry." Id. Because, as in *Kerrigan*, we do not reach the element of timeliness in the present case, we also refrain from addressing the appropriate standard of review regarding the timeliness prong.

[13] In *Edwards* v. *Houston*, 78 F.3d 983 (5th Cir. 1996), the Fifth Circuit Court of Appeals explained that this presumption arises "when the would-be intervenor has the same ultimate objective as a party to the lawsuit." Id., 1005.

spectrum, a presumption of inadequacy arises when an absentee must rely on his opponent or one whose interests are adverse to his." (Citation omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 60 Conn. App. 148–49, citing *Edwards* v. *Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). Thus, to overcome the presumption of adequate representation, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party . . . ." *Edwards* v. *Houston*, supra, 1005.

In the present case, the trial court, in denying the motion to intervene, stated that "the issues raised by the [association] appear to be fully and fairly raised . . . by the present pleadings based on the defendants' position that the [Parish] is a fictional entity without title or any right to possession [of the property in question]. Moreover, the [association] does not seek to intervene in order to assert a claim against the defendants." We agree with the trial court and further conclude that there is a presumption of adequate representation because the record demonstrates that the identities of the association members and the defendants are overlapping and that they have the same ultimate objective.

With respect to the issue of identity, it is clear that the defendants are members of the self-described "association" that moved to intervene in the pending litigation because the motion states that the defendants are association members.[14] Moreover, the resolution establishing the association was adopted by the "elected officers and vestry" of the Parish on behalf of its approximately 700 individual and 280 voting members, and it is undisputed that all of the defendants are present or former officers or vestry members of the Parish. In

[14] The association specifically alleged in its motion to intervene: "The [a]ssociation and its members (other than those named as defendants) are not bound by any orders of [the trial] [c]ourt."

addition, the resolution attached to the motion to intervene is signed by Tallardy as secretary of "Bishop Seabury Church," the same person who is a defendant in the action. Finally, the defendants in their counterclaim, like the association in its motion, described themselves as members of the entity identified in the deeds to the property. Accordingly, there is no question that the defendants and the association share an identity of interests that gives rise to a presumption that the association is adequately represented by the defendants merely on the basis that they are present or former officers or vestry members of the Parish.

The pleadings also indicate that the defendants and the association share the same stated objectives.[15] The association, which claimed to be the record owner of the property, an indispensable party, and an entity separate and apart from the Parish, moved to intervene in the action to defend its purported title to the property and to pursue a counterclaim against the plaintiffs. For all intents and purposes, however, the association's underlying objective in defending its purported title was to retain possession and control of the property and to preclude the plaintiffs or any other entity from being granted possession and control. This is evident from language in the motion to intervene repeatedly referring to the fact that the association was in possession and control of the property, that the Parish was not in possession and control of the property, and that, without the association's participation in the case, the trial court would be unable to resolve issues related to title, possession or control of the property.[16] See *Dixon* v. *Edwards*, 290 F.3d 699, 713 (4th Cir. 2002) (noting in

[15] The fact that some of the defendants may no longer hold elected positions in the Parish does not change the fact that their pleadings reflect the same interests expressed by the association.

[16] The association must attack the status of the Parish because it may not otherwise claim possession and control of the property on behalf of its members, whose interests they claim are not represented by the Parish.

similar action that injunction at issue "does not concern property ownership . . . but only the rights of access and control over the Parish property—that is, the question of who is in charge, not who owns the land").

The defendants have articulated the same objective. From the outset of this litigation, the defendants have made allegations almost identical to those of the association by claiming that the Parish was not the entity identified in the deeds to the property, that "Bishop Seabury Church" was an indispensable party and that the plaintiffs did not have an implied trust interest in the property. Specifically, the defendants alleged in their motion to dismiss and in their memorandum of law in support thereof that the Parish did not have standing because the real "Bishop Seabury Church" was an independent entity separate and distinct from the Parish and had not authorized initiation of the litigation. The defendants further alleged in their motion to strike and supporting memorandum of law that "Bishop Seabury Church Society," as distinguished from the Parish, was an indispensable party because the plaintiffs were seeking to wrest possession and control of the property from "Bishop Seabury Church Society," which was not represented in the litigation and thus could not be bound by any future orders of the court. In their answer to the plaintiffs' complaint, the defendants also denied any "characterization of the property as belonging to an entity other than the entities identified in the deeds," and, in their counterclaim directed against the Episcopal Church, they alleged that they represented "the vestry of Bishop Seabury Church" and, "[i]n [their] capacity *as members of the [Bishop Seabury] Church Society identified in the deeds attached to the plaintiffs' [c]omplaint*, they [did] not believe that the Diocese or [t]he Episcopal Church [could] unilaterally control the real [property] occupied by the [Church] Society . . . ." (Emphasis added.) Thereafter, the defendants sought

an automatic stay of the proceedings during the association's appeal of the trial court's ruling on the motion to intervene, an action that clearly was intended to benefit the association. Lastly, in documentation filed in connection with their motion for summary judgment, the defendants argued, inter alia, that the Diocese could not divest "Bishop Seabury Church" of property in which it had record title and that the property was not held in trust for the plaintiffs or any other entity.

In light of the fact that the association and the defendants have the same ultimate objective of retaining possession and control of the property and of precluding the plaintiffs from establishing possession and control, there is a presumption of adequate representation that the association can overcome only by showing an adversity of interest, collusion or nonfeasance by the defendants. *Edwards* v. *Houston,* supra, 78 F.3d 1005. We conclude that the association has failed to meet this burden.

The association argues that the defendants cannot adequately represent its interests because the association is the only entity that can (1) seek to quiet title in its name, (2) prove the entitlement of its officers and vestry members to hold their respective seats, (3) invoke the Marketable Title Act as a defense to the plaintiffs' implied trust claim, and (4) pursue an alternative claim against the plaintiffs under the ejectment statute, General Statutes § 47-30. We conclude that none of these arguments suggests an adversity of interest, collusion or nonfeasance by the defendants.

The association first argues that, because the defendants do not, and cannot, claim to have record title in their names, the association is the only entity that can seek to quiet title to the property. This argument is apparently based on a belief that the association may retain possession and control of the property if the

court determines that it holds record title. In *Rector, Wardens & Vestrymen of Trinity-St. Michael's Parish, Inc.* v. *Episcopal Church in the Diocese of Connecticut,* 224 Conn. 797, 620 A.2d 1280 (1993), however, we stated that "[w]hether a parish holds record title . . . is not dispositive of whether a trust agreement exists." Id., 819–20 n.21; see also *Dixon* v. *Edwards,* supra, 290 F.3d 713 (injunction at issue did "not concern property ownership . . . but only the rights of access and control over the Parish property—that is, the question of who is in charge, not who owns the land"). Accordingly, the question of who holds title to the property is irrelevant in this context. Moreover, to the extent the association's underlying objective in seeking to quiet title is to retain possession and control of the property, the defendants have aggressively pursued this objective throughout the litigation. For example, as previously explained, the defendants effectively alleged in their answer and counterclaim that the Parish was not the entity identified in the deeds to the property and thus had no right to possession or control. An objective reading of all of the pleadings therefore indicates that the defendants have consistently represented the interests of the association on the issue of who holds title to the property.

The association next argues that the defendants cannot adequately represent its interest in proving the entitlement of its officers and vestry members to hold their respective seats. The record indicates, however, that the defendants have vociferously represented the association's interests from the outset of the litigation, and the association provides no explanation, beyond its conclusory statement that it is not adequately represented, as to why the defendants, as members of the association, are not well qualified to represent this interest.

The association further argues that, because the trial court determined that the defendants could not invoke

the Marketable Title Act (act) as a defense to the plaintiffs' implied trust claim, the association, which, it claims, has held title to the property in its name since 1966, is the only entity that can raise such a defense. We first observe that the association made no reference to the act in its motion to intervene, and the trial court did not rule on the applicability of the act until more than nine months later, as part of its decision on the parties' motions for summary judgment. Accordingly, the court could not have considered this argument when it denied the motion to intervene. Furthermore, the argument is premised on a faulty understanding of the trial court's decision. The trial court concluded that the act was "inapplicable" because the recording of the trust interest was "not a prerequisite to establishing the existence of an implied trust" and because the plaintiffs did "not seek to change the record title to the subject property but, rather, [sought] declaratory and injunctive relief regarding their right to possess [the] property premised on the relationship between the Parish . . . the Episcopal Church and [the] Diocese." The trial court's conclusion thus did not rest on the defendants' status as individuals but on general considerations relating to the plaintiffs' claims, which would not have changed if the association had raised the same defense.

The association's final argument is that the defendants could not provide adequate representation in the event that the association brings a future claim that, if the plaintiffs prevent the association from retaining possession of the property, it would be entitled to compensation pursuant to § 47-30,[17] the ejectment statute.

[17] General Statutes § 47-30 provides in relevant part: "Final judgment shall not be rendered, in any action to recover the possession of land, against any defendant who has, in good faith, believing his title to the land in question absolute, made improvements on the land before the commencement of the action, or whose grantors or ancestors have made the improvements, until the court has ascertained the present value of the improvements and the amount reasonably due the plaintiff from the defendant for the use and occupation of the land. . . ."

We decline to review this argument because the association failed to raise it in its motion to intervene. As we previously noted, in "judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion . . . to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 457. Having examined the pleadings, we conclude that the association made no allegations of this nature in its motion to intervene. Moreover, even if the association had raised this argument in its motion, it is irrelevant because the plaintiffs have not brought an ejectment action, and there are no grounds for considering any argument premised on such an action. Thus, the argument fails to demonstrate the required adversity of interest, collusion or nonfeasance on the part of the defendants. *Edwards* v. *Houston*, supra, 78 F.3d 1005. For all of the foregoing reasons, the association has not overcome the presumption that its interests are being adequately represented by the defendants, and we conclude that the trial court properly denied the association's motion to intervene.

The association also claims that the trial court improperly denied its request for an evidentiary hearing so that it could prove its right to possession of the property and its right to intervene. It further claims that, instead of taking the association's allegations as true, as the court was required to do, the court stated that it had considered the "totality of the [movant's] and the parties' positions . . . ." The association thus claims that it was deprived of the opportunity to prove its allegations that, among other things, the property is not held in trust for the plaintiffs or any other entity and that the Parish is not the real "Bishop Seabury Church." The plaintiffs respond that the association "inaccurately characterizes the trial court's decision

and improperly conflates the court's consideration of the 'totality of the parties' positions' with the unrelated concept of the 'merits' of the [association's] allegations." We conclude that the trial court properly denied the association's request for an evidentiary hearing.

We repeatedly have stated in this opinion that, in "judging the satisfaction of [the] conditions [for intervention] we look to the pleadings, that is, to the motion . . . to intervene and to the proposed complaint or defense in intervention, and . . . we accept the allegations in those pleadings as true." (Internal quotation marks omitted.) *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 457. The trial court's analysis, however, was not complete after it considered the allegations in the motion to intervene and took them as true. It also was required to consider whether the association's interests were adequately represented by another party to the litigation. See id., 456–57. In making this determination, the trial court examined all of the pleadings in order to reach a decision as to whether the defendants could adequately represent the interests of the association. Accordingly, the trial court's conclusions that "[t]he issues raised by the [association] appear to be fully and fairly raised in this case by the present pleadings based on the defendants' position that the [Parish] is a fictional entity without title or any right to possession" and that the association did "not seek to intervene in order to assert a claim against the defendants" were entirely proper. In other words, the court correctly considered the "totality" of the parties' positions, as expressed in their pleadings, to determine whether the association's interests could be adequately represented by the defendants.[18]

---

[18] The plaintiffs note that the trial court referred to the "totality" of the parties' positions immediately before concluding that it was "not inclined to allow permissive intervention," and, accordingly, the court's use of that term had nothing to do with its decision regarding intervention as of right. We take the broader view, however, because we construe the decision as applying to both types of intervention.

Finally, insofar as the association claims that an evidentiary hearing was required so that it could have the opportunity to prove its claims on their merits, the trial court's conclusion that the association's interests were adequately represented by the defendants rendered such a hearing unnecessary. Accordingly, we conclude that the trial court properly denied the association's request for an evidentiary hearing.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.